[Crim. No. 18651. In Bank. Feb. 20, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES THOMAS RIST, Defendant and Appellant.

212

Dennis L. Cava, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Roy C. Preminger, Howard J. Schwab, Alexander W. Kirkpatrick and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

Louis P. Bergna, District Attorney (Santa Clara), and Albert C. Bender, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Charles Thomas Rist appeals from a judgment upon a jury conviction of robbery of the first degree (Pen. Code, §§ 211, 211a)

and a finding that he had used a firearm in the commission of the robbery (Pen. Code, § 12022.5). He was sentenced to state prison for the term prescribed by law to run concurrently with a prison term already being served. We agree with defendant's contention that the trial court abused its discretion in denying his motion to exclude evidence of a recent prior robbery conviction offered for the purpose of impeaching defendant's credibility and, accordingly, reverse the judgment. (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].)

Carol Ann Supple was employed at the counter in the Pioneer Chicken Restaurant in Cerritos. Around 9:15 p.m. on September 30, 1973, defendant approached the counter and demanded of Carol that she "Give me the money." He displayed momentarily a revolver which was concealed under his shirt, and directed that Carol go to the cash register and give him the "big bills underneath, too." When she had given him approximately $150, defendant ran from the restaurant. Two other employees, working in the back room of the establishment, did not observe the incident. Carol noted several distinctive characteristics of defendant's dress and appearance, which she subsequently related to the police.[1]

Nearly three weeks later, on October 17, Police Sergeants Hagthrop and Endersby showed Carol seven photographs of suspects. The photographs, arranged in a line, were all of white males. Carol unhesitatingly chose a photograph of defendant and initialed it.[2] Approximately one week after the photographic identification Carol picked defendant out of a lineup of six men, four of whom were taller

---

[1] Carol reported that defendant appeared about 35 years old; that his hairline was receding; that he lacked 2 front teeth; that he had 2 days' growth of beard; that he appeared to weigh 130 pounds and to be 5 feet, 4 inches tall; and that he wore blue jeans, a white T-shirt, a maroon Pendleton shirt and silver-rimmed spectacles.

[2] On *voir dire* outside the jury's presence, Carol's account of the photographic identification session differed in certain respects from her testimony before the jury. She stated that "about two" of the photographs shown to her on October 17 were of Blacks, and that the officers arranged the pictures in a square. Whereas she testified in the presence of the jury that her memory of the robber's face was more distinct on the day of the robbery than during the photographic identification, her testimony on *voir dire* was to the contrary. Carol also stated on *voir dire* that the subject of each photograph had a receding hairline and no eyeglasses. She did not repeat the latter statement in the presence of the jury, nor did she reiterate the *voir dire* assertion that she felt sufficiently certain of the robber's appearance that she could have recognized him in a crowded shopping center.

Sergeant Hagthrop testified on *voir dire* that Carol was shown no pictures of Blacks.

than defendant and one of whom was similar to defendant in height.[3] She testified without contradiction that her identification of defendant at trial was the result of her memory of the robbery, not of the photographic or lineup identifications.

■ We consider initially a contention that inconsistencies in Carol's testimony were such as to create "a very serious doubt as to her veracity, memory and perceptive abilities," and that therefore "her in-court identification was not based upon an independent source."[4] The contention is without merit. The specific instances to which defendant refers have little or no bearing on the reliability and accuracy of Carol's identification of him. Carol had an unobstructed view of defendant for at least three minutes during the robbery and was thus able to form a detailed impression of his appearance. The few arguable inconsistencies to which defendant points cannot be said to render Carol's otherwise firm and clear testimony unreliable as a matter of law. ■ Confusion, or lack of clarity and positiveness in a witness' identification testimony goes to the weight, not the admissibility of the testimony. (*People* v. *Williams* (1973) 9 Cal.3d 24, 37 [106 Cal.Rptr. 622, 506 P.2d 998]; *People* v. *Gonzales* (1968) 68 Cal.2d 467, 472 [67 Cal.Rptr. 551, 439 P.2d 655].) ■ Defendant's identification was thus a question for the trier of fact and having been resolved on substantial evidence must be sustained on appeal.

■ Defendant also contends that he was entitled to the presence of counsel at the photographic identification session of October 17. We have consistently rejected the contention that the constitutional right to counsel extends to photographic identification procedures (*People* v. *Rhinehart* (1973) 9 Cal.3d 139, 153 [107 Cal.Rptr. 34, 507 P.2d 642];

---

[3]There was one disparity between Carol's *voir dire* testimony and her statements before the jury concerning the lineup: on *voir dire* she stated that defendant was the shortest suspect in the lineup.

[4]Defendant points to 13 asserted inconsistencies between various parts of Carol's testimony, and between her testimony and other witnesses' versions of the events. Typical of the nature of the claimed inconsistencies, Carol testified that she first saw defendant at the counter as she turned from her work and asked, "May I help you?" whereas an officer testified that Carol stated extrajudicially that she first noted defendant "when he spoke to her and she turned around and saw him." It also appears that Carol testified on *voir dire* that of the photographs she viewed on October 17, two were of Blacks, whereas Sergeant Hagthrop, as well as Carol in the jury's presence, testified that she was shown no pictures of Blacks. Sergeant Hagthrop's testimony also conflicted with that of Carol as to the time when she made the photographic identification. Other inconsistencies urged by defendant, some of which have heretofore been noted (see fns. 2 and 3, *ante*), were of no greater significance than the foregoing.

*People* v. *McInnis* (1972) 6 Cal.3d 821, 827 [100 Cal.Rptr. 618, 494 P.2d 690]; *People* v. *Lawrence* (1971) 4 Cal.3d 273, 275, 279-280 [93 Cal.Rptr. 204, 481 P.2d 212]), as has the United States Supreme Court (*United States* v. *Ash* (1973) 413 U.S. 300, 321 [37 L.Ed.2d 619, 633, 93 S.Ct. 2568]). Nor is there a constitutional denial based on due process considerations in the absence of a showing of overall unfairness in a photographic identification session. (*People* v. *Lawrence, supra,* 4 Cal.3d 273, 280.) As the photographs from which Carol identified defendant were available at trial, defense counsel had adequate opportunity to demonstrate the identification method's potential for error. *(Id.,* at pp. 278-279.) We thus reject defendant's claim of constitutional denial based on the lack of counsel at the photographic identification.

■ Defendant further urges that the procedures followed at the photographic and the lineup identifications were so unduly suggestive as to have produced a substantial likelihood of irreparable misidentification. (See *Foster* v. *California* (1969) 394 U.S. 440, 442 [22 L.Ed.2d 402, 406, 89 S.Ct. 1127]; *Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]; see also *Neil* v. *Biggers* (1972) 409 U.S. 188, 196-197 [34 L.Ed.2d 401, 409-410, 93 S.Ct. 375].) The record discloses no such probability of erroneous photographic identification. There is no evidence that defendant's photograph was singularly marked (see *People* v. *Caruso* (1968) 68 Cal.2d 183, 187-188 [65 Cal.Rptr. 336, 436 P.2d 336]), that the photographs were arranged in a suggestive fashion, or that the officers said anything to influence Carol's choice. The fact that the words "Police Department, Anaheim, California" appeared on the bottom of defendant's photograph is of little significance in view of the fact that the same legend was printed in the same location on all seven photographs. The record is barren of evidence to support the claim that "a great disparity existed in the appearance between the [defendant] and the other persons shown in the photos." In any event, Carol's testimony unequivocally reflected an ample opportunity to observe defendant's features during the robbery (see *Simmons* v. *United States, supra,* 390 U.S. 377, 385 [19 L.Ed.2d 1247, 1253-1254]; *People* v. *Williams, supra,* 9 Cal.3d 24, 37; cf. *People* v. *Bisogni* (1971) 4 Cal.3d 582, 587 [94 Cal.Rptr. 164, 483 P.2d 780]), and the photographic identification had negligible effect on her in-court identification of defendant.[5]

---

[5]Defendant was in custody when the photographic session was conducted. While we believe that it might have been preferable to hold a corporeal lineup rather than a photographic session as the first identification procedure (cf. *Simmons* v. *United States, supra,* 390 U.S. 377, 384), there was no denial of due process in the otherwise fairly conducted photographic identification. (Cf. *In re Hill* (1969) 71 Cal.2d 997, 1004-1006 [80 Cal.Rptr. 537, 458 P.2d 449].)

There is likewise no support in the record for the contention that the lineup was unfairly conducted. Defendant, apparently referring to photographs taken at the lineup describes each of the six suspects and concludes that "there was an extreme disparity in appearance between [himself] and the other persons at the lineup." The record fails to support such a claim. Aside from the fact that defendant may have been the shortest member of the lineup there is no evidence that he differed in appearance from the other members.[6] Finally, there is evidence that Carol's in-court identification of defendant had a source independent of the lineup, viz., her opportunity to observe him during the robbery. (*People* v. *Williams, supra,* 9 Cal.3d 24, 37; *In re Hill, supra,* 71 Cal.2d 997, 1006.) Defendant's contention that either or both the photographic and lineup identifications were unduly suggestive is thus without merit.

We turn to the contention that the trial court abused its discretion in ruling admissible for the purpose of impeachment defendant's 1973 conviction for robbery. Defendant moved at the commencement of trial to exclude evidence of such prior convictions as well as evidence of 1971 convictions for forgery of a credit card and possession of marijuana. The court ruled that the robbery but not the other convictions was admissible to impeach defendant.[7] Defendant elected not to testify at trial.

In *People* v. *Beagle, supra,* 6 Cal.3d 441 (see also *People* v. *Antick* (1975) 15 Cal.3d 79, 97-99 [123 Cal.Rptr. 475, 539 P.2d 43]), we considered the interaction of Evidence Code sections 352 and 788[8] as they relate to prior felony convictions offered to impeach a witness, especially when the witness is the defendant in a criminal trial. We concluded that section 352 invests the trial court with discretion to exclude evidence of a prior felony conviction when its probative value is outweighed by the risk of undue prejudice which its admission would occasion. (*Id.,* at p. 453.) Among the factors which the

---

[6]Carol was sufficiently certain of defendant's identity as the robber to have selected him immediately as he entered the lineup room.

[7]The motion was made pursuant to Evidence Code section 352 which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[8]With certain exceptions not herein relevant, Evidence Code section 788 provides: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ."

court must weigh in deciding whether a witness' prior felony conviction should be admitted for the purpose of impeachment, are the conviction's bearing on honesty and integrity, the temporal propinquity or remoteness of the conviction, and the similarity between the conduct upon which the prior conviction rested and the conduct for which the accused is on trial when he is the witness whose impeachment is sought.

A jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged. The exclusion of a similar prior conviction is especially warranted when the defendant has also suffered a prior conviction or convictions for conduct *dissimilar* to that for which he is on trial, as the dissimilar prior crimes are available as grounds of impeachment and exclusion of the similar one is the wiser path. (*Id.,* at p. 453.) A final consideration which we deemed important in *Beagle* (and in the decisions upon which *Beagle* relied, viz., *Luck* v. *United States* (1965) 348 F.2d 763, 768 [121 App.D.C. 151] and *Gordon* v. *United States* (1967) 383 F.2d 936, 940-941 [127 App.D.C. 343]) is the desirability in a particular case that the jury hear the defendant's version of the conduct charged as criminal. " '. . . Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment.' " (*Id.,* at p. 453.)

Although *Beagle* does not seek to establish rigid standards to govern a trial court's exercise of discretion (*id.,* at pp. 453, 454; see also *Schullman* v. *State Bar* (1973) 10 Cal.3d 526, 540 [111 Cal.Rptr. 161, 516 P.2d 865]), we are mindful that judicial discretion is by no means a power without rational bounds. ■ " '. . . The term [judicial discretion] implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. [¶] To exercise the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision.' " (*In re Cortez* (1971) 6 Cal.3d 78, 85-86 [98 Cal.Rptr. 307, 490 P.2d 819], quoting from *People* v. *Surplice* (1962) 203 Cal.App.2d 784, 791 [21 Cal.Rptr. 826].)

■ In the instant case defendant had suffered the prior robbery conviction only five months before the trial commenced, and thus there

was no problem of temporal remoteness. It is a crime which is both larcenous and assaultive, and thus bears in part on the perpetrator's integrity and veracity.

More compelling than the foregoing considerations,. however, is the factor of similarity between the prior robbery and the offense for which defendant was on trial. Although two prior convictions for conduct dissimilar to that charged were available for purposes of impeachment, the judge chose to exclude those and to admit the one prior which had the potential to lead the jury to identify the charged misconduct with the prior conviction. Moreover, in terms of relevance to honesty and credibility certainly the value of a robbery conviction is not of greater weight when compared to defendant's 1971 conviction for forgery of a credit card. We observed in *Beagle* that prior convictions for the same crime should be admitted sparingly. (*People* v. *Beagle, supra,* 6 Cal.3d 441, 453.) With dissimilar priors available reason fairly dictated that the trial court exclude defendant's robbery conviction as a showing of defendant's possible dishonesty could have been accomplished by use of his far less prejudicial forgery conviction. By selecting the robbery as the prior conviction for purposes of impeachment, the court thus acted in a manner directly contrary to the admonishment.[9]

In view of the foregoing it is manifest that the trial court failed to exercise a discriminating judgment within the bounds of reason (*In re*

---

[9]It appears that the trial court gave only perfunctory consideration to the *Beagle* guidelines. Defense counsel, apparently aware that the court's ruling was contrary to *Beagle* standards, was afforded no opportunity to explain the basis of his opposition to the ruling. As the following excerpt from the reporter's transcript indicates the trial court was either unaware of or neglected to apply *Beagle* standards requiring an examination of both the probative value and prejudicial effect of evidence of a particular prior conviction. The record reflects only the following as the basis for the court's ruling:

"MR. GIST [defense counsel]: I would like to make a legal motion. The defendant would move that the Court exclude evidence of his prior convictions pursuant to Evidence Code [s]ection 352. The defendant was charged with two prior convictions, one of which on October 30 [*sic*], 1971, was—

"THE COURT: The Court will rule this way, Counsel: [t]he Court will not permit the usage of the convictions [*sic*] of forgery and the conviction of possession of marijuana for impeachment purposes; however, the Court will permit the usage of the conviction of robbery for impeachment purposes.

"MR. GIST: Your Honor, it would seem to me that this is exactly what Beagle [*People* v. *Beagle, supra,* 6 Cal.3d 441] indicates should not happen. The robbery is so closely related to the issues of this particular case—

"THE COURT: The issues, of course, lie with the question as to truth, honesty and veracity. Certainly robbery itself is an offense which distinctly goes to truth and honesty.

"MR. GIST: That's true, Your Honor, but—

"THE COURT: *I am sorry, Counsel, but that's the way this Court approaches matters of this nature and that will be the ruling of the Court.*" (Italics added.)

*Cortez, supra,* 6 Cal.3d 78, 85), and thus abused its discretionary powers as recognized in *Beagle.*

We note that *Beagle* has not been adhered to in a number of reported decisions. Thus in *People* v. *Delgado* (1973) 32 Cal.App.3d 242 [108 Cal.Rptr. 399], a defendant charged inter alia with assault with intent to rape and attempted forcible rape, moved to exclude 18-month-old prior convictions of forcible rape and assault with intent to rape. The trial court denied the pretrial motion and the defendant did not testify. The judgment of conviction was affirmed, the appellate court holding no abuse of discretion in the admission of the prior convictions as they involved "an element of stealth which bears some rational relationship to dishonesty." (*Id.,* at p. 250.)

We do not agree with the *Delgado* court that the defendant's prior convictions significantly involved honesty or integrity. Moreover, that court accorded little weight to the crucial counterbalancing factors noted in *Beagle,* particularly the near identity of the crimes and the effect of the defendant's failure to testify in circumstances where his testimony might be significant. (See also *People* v. *Stewart* (1973) 34 Cal.App.3d 244 [109 Cal.Rptr. 826] [held no abuse of discretion when the trial court refused to exclude 1957, 1963 and 1967 burglary convictions in the case of a defendant charged with a 1972 burglary]; *People* v. *Jackson* (1974) 37 Cal.App.3d 496 [112 Cal.Rptr. 411] [held no abuse when trial court refused to exclude a recent robbery conviction although other dissimilar recent convictions were available, in a case where the defendant was charged with robbery]; *People* v. *Wingo* (1973) 34 Cal.App.3d 974 [110 Cal.Rptr. 448] [held no abuse of discretion when trial court refused to exclude 1959 and 1966 burglary convictions although a dissimilar conviction was available in a case where the defendant was charged with attempted burglary]; *People* v. *Hayden* (1973) 30 Cal.App.3d 446 [106 Cal.Rptr. 348] [held no abuse of discretion when trial court refused to exclude an armed robbery conviction when defendant was charged with armed robbery in three counts].)

*Beagle* requires that the trial court, and the appellate court when a challenge is made to the trial court's exercise of discretion, consider *all* those pertinent factors bearing on the question whether the probative value of evidence of 'a prior conviction as it bears on credibility is outweighed by the risk of undue prejudice under the unique facts of the particular case. (See *People* v. *Antick, supra,* 15 Cal.3d 79, 97-99; *People* v. *Obie* (1974) 41 Cal.App.3d 744 [116 Cal.Rptr. 283]; *People* v. *Coleman*

(1973) 32 Cal.App.3d 853 [108 Cal.Rptr. 573]; *People* v. *Carr* (1973) 32 Cal.App.3d 700 [108 Cal.Rptr. 216].) As a general rule, convictions which are assaultive in nature do not weigh as heavily in the balance favoring admissibility as those convictions which are based on dishonesty or some other lack of integrity. Nor do prior convictions which are dissimilar to the crime charged weigh as heavily in the balance favoring exclusion as those which are the same as or similar to the crime charged. The temporal nature of the prior conviction may affect the balance either for or against admissibility—a recent conviction of a dissimilar crime grounded on a dishonest act would add weight in favor of admissibility, but a recent conviction of a similar, assaultive crime would add weight in favor of exclusion as the prejudicial effect would therefore be even greater.

Perhaps the most difficult to evaluate of the *Beagle* factors is the adverse effect on the administration of justice should a defendant elect not to testify for fear of impeachment. Such an evaluation must necessarily depend in large part on the totality of other evidence bearing on the question of the defendant's guilt in the unique circumstances of the particular case. The trial court may be aided in making such evaluation should the defendant in support of his motion to exclude prior convictions make an offer of proof as to matters to which he will testify should the motion be granted. However, such an offer, although doubtless helpful to the court, is not a *sine qua non* to the court's duty to evaluate probative value against prejudicial effect and where as in the instant case the other *Beagle* factors dictate the exclusion of a prior conviction or convictions because their prejudicial effect manifestly overbalances their probative value it is an abuse of discretion to deny the motion to exclude.[10] (Cf. *People* v. *Benjamin* (1974) 40 Cal.App.3d 1035, 1043 [115 Cal.Rptr. 668]; *People* v. *Jackson, supra,* 37 Cal.App.3d 496,

---

[10]We emphasize that our discussion herein is limited to the use of prior felony convictions to impeach the credibility of a criminal defendant, and does not extend to other, permissible uses of a defendant's prior convictions (e.g., as proof of an element of the presently charged offense (Evid. Code, § 1101, subd. (b)), or by way of good-faith cross-examination of witnesses who have testified regarding the defendant's good character (*People* v. *Wagner* (1975) 13 Cal.3d 612, 619 [119 Cal.Rptr. 457, 532 P.2d 105]; *People* v. *Wrigley* (1968) 69 Cal.2d 149, 166 [70 Cal.Rptr. 116, 443 P.2d 580])). Moreover, the views we now express pertain only to the introduction of prior felony convictions to impeach a witness who is the defendant in a criminal prosecution; we are not herein concerned with the use of prior convictions to impeach other witnesses in criminal or civil proceedings.

To the extent that they conflict with the views expressed in this opinion we disapprove *People* v. *Hayden, supra,* 30 Cal.App.3d 446, *People* v. *Delgado, supra,* 32 Cal.App.3d 242 and their progeny.

499; *People* v. *Wingo, supra,* 34 Cal.App.3d 974, 983; *People* v. *Stewart, supra,* 34 Cal.App.3d 244, 248-249.) It moreover appears from the colloquy between the court and counsel for defendant (see fn. 9, *ante*) that there was in fact no true exercise of the court's discretion. The final statement of the court, "I am sorry, Counsel, that's the way this Court approaches matters of this nature and that will be the ruling of the court" not only precluded counsel from presenting further argument in support of his motion but also indicated that the ruling was based upon the practice of the court and not upon an exercise of discretion.

■ Although in the instant case Carol's testimony constitutes substantial evidence of defendant's guilt of the robbery as charged, we cannot presume to know what defendant's testimony might have been had he testified, as might well have happened had the court excluded his conviction for robbery.[11] It is thus not possible for us to determine on the record before us the degree of prejudice suffered by defendant because of the court's error in failing to grant his motion, and the usual tests for concluding that an error requires the reversal of a judgment of conviction are not applicable. (See *People* v. *Hill* (1974) 12 Cal.3d 731, 769 [117 Cal.Rptr. 393, 528 P.2d 1].) Defendant is entitled to a new trial at which the disposition of his *Beagle* motion, if any, will accord with the views expressed herein.

The judgment is reversed.

Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. With due deference, I suggest that, as in *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], the majority write into Evidence Code section 788 exceptions which the Legislature did not make to the general rule that felony convictions are admissible to attack the credibility of a witness. In doing so, the majority do not purport to base their decision upon overriding constitutional grounds. Indeed, as we noted in *People* v. *Beagle* (1972) 6 Cal.3d 441, 454 [99 Cal.Rptr. 313, 492 P.2d 1], ". . . there is no constitutional bar to the use of valid prior felony convictions for impeachment purposes . . . ."

Section 788 unambiguously provides that, with four specific exceptions not herein pertinent, "For the purpose of attacking the credibility of a

[11] If defendant's counsel intended to make an offer of proof of his client's expected testimony, the court's summary disposition of the *Beagle* motion precluded such an offer.

witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ." In *People* v. *Beagle, supra,* we carefully explained that since section 788 is not expressed in mandatory terms, the trial courts should have *discretion* to exclude evidence of prior convictions when their probative value is outweighed by the risk of prejudice. (Pp. 451-453.) In other words, under *Beagle,* trial courts are not *required* to admit all prior felonies. *Beagle* also pointed out, however, that, "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The general rule is that felony convictions bearing on veracity are admissible." (P. 453.) In this context, I have understood that by use of the foregoing language we meant that a witness taking the stand must anticipate that he risks exposure to the fact finder of impeaching evidence based upon previous criminal convictions. We emphasized in *Beagle* that "We do not purport to establish rigid standards to govern that which in each instance must depend upon *the sound exercise of judicial discretion.*" (*Id.,* italics added.)

Notwithstanding the foregoing *Beagle* rationale, first in *Antick,* and now in the present case, we impose those "rigid standards" which we disclaimed in *Beagle.* In *Antick* the majority held that the trial court abused its discretion when it permitted the People to introduce two "remote" forgery convictions (committed in 1957 and 1955), despite the fact that such convictions by their nature were relevant to the issue of defendant's credibility. (See 15 Cal.3d at pp. 100-101 [dis. opn.].) Under *Antick,* trial courts presumably must *always* exclude similarly "remote" convictions, despite *Beagle's* insistence that the matter rests in the court's "sound discretion"; yet, section 788 imposes no such restriction.

In the present case, a similar rigid rule is established: A prior conviction may not be introduced to attack defendant's credibility if the charge is "similar" to the offense being tried, and if other nonsimilar priors are available. The majority concede that the prior conviction at issue herein was neither remote (being committed in 1973) nor lacking in probative value (being relevant to defendant's "integrity and veracity"). Defendant herein had sustained *three* prior convictions, a 1973 robbery, a 1971 forgery, and a 1971 marijuana possession charge. Under section 788, as interpreted by *Beagle,* the trial court had discretion to admit all, any, or none of the priors. The court exercised that discretion to exclude the two older offenses, presumably on the theory that the more recent offense would be more probative of defendant's lack of credibility. The majority find this choice to be an abuse of discretion, given the similarity of the prior conviction and the offense to be tried.

The net effect of our decisions in *Antick* and the present case will be to require the trial courts to exclude all "remote" or "similar" priors, rather than risk a reversal of the conviction on appeal, even though neither constitutional considerations nor section 788's language so requires, and even though we have said that no witness is entitled to "a false aura of veracity" and that the "sound discretion" of trial courts should determine admissibility. This result seems to me to constitute an effective revision of Evidence Code section 788, and lacking either constitutional or statutory compulsion, an invasion of the trial court's discretion.

I would affirm the judgment.

McComb, J., and Clark, J., concurred.

Respondent's petition for a rehearing was denied March 31, 1976. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.