[Crim. No. 27728. Second Dist., Div. Three. Apr. 28, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE W. ROBERTS, Defendant and Appellant.

784

## COUNSEL

Seymour I. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and James H. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POTTER, J.**—By information, George William Roberts (hereinafter "defendant") was charged with the October 5, 1974 robbery (Pen. Code, § 211) of Carla Jean Spencer. An amendment charged two prior felony convictions: an April 22, 1969, conviction of grand theft from the person (Pen. Code, § 487, subd. 2), and a May 13, 1969, conviction of robbery (Pen. Code, § 211). Defendant, out of the presence of the jury, admitted these priors. Prior to the trial, defendant made a motion under *People* v.

*Beagle* (6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]) to prevent use of the two prior convictions for impeachment purposes. This motion was denied.

Jury trial commenced on July 10, 1975. Jury deliberations began on Friday, July 11, 1975. On July 14, 1975, the jury found defendant to be guilty of robbery in the second degree. Defendant was sentenced to state prison for the term prescribed by law. Defendant filed timely notice of appeal. (Pen. Code, § 1237.)

*Facts*

On October 5, 1974, at approximately 11 p.m., Carla Jean Spencer was returning to her parked car after spending an evening at the Hollywood Park Race Track. Ms. Spencer left the track prior to the ninth race. At her car, while attempting to remove the car keys from her purse, she heard a "shuffle of steps to my left and somebody come right under my left arm, grabbed my handbag jerked it right down and snapped it off the handle."

Ms. Spencer turned, catching a "fleeting glance" of the suspect. She described him as Negro, wearing pink pants, a little dark cap with a bill, and a dark shirt. She identified defendant as this man.

Shouting for help, Ms. Spencer ran after defendant. He continued running, dodging behind a white panel truck, where Ms. Spencer lost sight of him for a few seconds. At this point he dropped the purse. Ms. Spencer stopped to pick up the purse, while defendant kept running. A billfold, checkbook, and address book were later dropped prior to defendant's apprehension by track employees.

On further examination, Ms. Spencer said that "very few people" were in the parking lot. She saw defendant for "a matter of seconds." She did not see defendant throw the purse down. She did see him after he came "out from the other side [of the van] and turned to the left and went towards the Forum." Ms. Spencer did not notice if the suspect had a moustache or beard.

Defendant testified that he was at the track the day in question, wearing gray platform shoes with three-inch heels, a long-sleeve black shirt, a cap, light pink pants, and a waist length leather coat. Defendant had a four-and-one-half inch Van Dyke beard. He had left the track

after the eighth race and was hurrying to his car which was parked on the Forum side of the driveway. He stated that the track was quite crowded because the ninth race is free and "a lot of people are rushing to get in." Defendant stated he could not jog because he was wearing platform shoes. When he was mistakenly grabbed by the security men, his heel came off his right shoe. He had no connection whatsoever with the robbery.

On cross-examination, the prosecutor brought out the prior felony convictions as follows:

"Q. BY MR. SAUKKOLA [Counsel for Plaintiff]: Mr. Roberts, have you ever been convicted of a felony? A. Yes. I admitted to a felony. Q. On April 22, 1969, were you convicted of a felony, grand theft person, in violation of Section 487.2 of the Penal Code? A. No. I just told you I admitted to it. Q. You were convicted of that offense; is that correct? A. If that's convicted, yes. Q. Now, on May 13, 1969, were you convicted of a violation of Section 211 of the Penal Code, robbery, a felony? A. If that's admitting, yes. Yeah. Convicted, yes. Q. Well, prior to the proceedings that are taking place before the jury, you admitted those prior convictions to the Court, did you not? A. I didn't go before a jury. MR. KOJIMA [Deputy Public Defender]: Objection, Your Honor."

An objection and motion for mistrial was made and denied. At the end of defendant's testimony, defendant's counsel renewed his pretrial motion, objecting "to the impeachment of the defendant by the use of his prior conviction" and moved "to strike all the testimony thereof." This objection and motion were also denied.

The court gave CALJIC No. 2.20 on credibility of witnesses, including the last sentence referring to a witness' "conviction of a felony." It did not, however, give CALJIC No. 2.23, or otherwise admonish the jury that defendant's conviction of a felony "may be considered by you only for the purpose of determining the credibility of that witness."

Jury deliberations began at 11:45 a.m., Friday morning, July 11. At 4 p.m., the jury requested the rereading of certain testimony. This was postponed to Monday, July 14, when the jury requested the rereading of "Mrs. Spencer's testimony from the time he [defendant] went behind the van to the time he was apprehended, . . . [and] Mr. Roberts' testimony from the time he left the races covering his statement as to where his car was parked and where he was apprehended." At 3:25 p.m., that Monday, the jury returned its guilty verdict.

*Issues*

On appeal, defendant contends:

1. The evidence did not establish the corpus delicti as to the robbery charge; and

2. A fair trial was denied through overbroad impeachment regarding prior felony convictions.

*Discussion*

### *There Is Substantial Evidence to Sustain Defendant's Conviction for Robbery*

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.)

Defendant accurately states that the elements of "force and fear" are factual, to be determined by the jury. (*People* v. *Church,* 116 Cal. 300, 302-303 [48 P. 125].) He appears to contend, however, that, as a matter of law, "the purse snatch was accomplished in such a short space of time that the requisite force . . . of robbery did not exist."

This contention is wholly without merit. On appeal, we must view the evidence in the light most favorable to the People, as the party who prevailed below, and we must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People* v. *Reilly,* 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

Certainly, the evidence that the purse was grabbed with such force that the handle broke supports the jury's implied finding that such force existed. (See 1 Witkin, Cal. Crimes (1963) § 439, p. 406; Annot., Purse Snatching as Robbery or Theft, (1972) 42 A.L.R.3d 1381.)[1]

[1] While this evidence sufficiently establishes the corpus delicti of robbery, it is susceptible of an interpretation (perhaps remote) which, if accepted, would render the defendant guilty of the lesser included offense of grand theft from the person. (Pen. Code, § 487, subd. 2.) Consequently, if an instruction on such lesser included offense is requested on retrial, it must be given. (*People* v. *Morales,* 49 Cal.App.3d 134, 139 [122 Cal.Rptr. 157].)

■ *The Trial Court Abused Its Discretion*
*in Ruling Admissible for Purposes of*
*Impeachment Defendant's 1969 Convictions*

In *People* v. *Rist,* 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], our Supreme Court discussed the principles first enunciated in *People* v. *Beagle,* 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. In *Rist,* defendant, on trial for robbery, was impeached by a recent prior robbery conviction. Dissimilar felony convictions, available for impeachment, were excluded. Defendant did not testify at trial. The court held the failure of the trial court to prevent impeachment use of this robbery conviction to be an abuse of discretion.

In so ruling, the court noted several factors which should be taken into account in determining admission for impeachment purposes.

"[T]he conviction's bearing on honesty and integrity, the temporal propinquity or remoteness of the conviction, and *the similarity between the conduct upon which the prior conviction rested and the conduct for which the accused is on trial* when he is the witness whose impeachment is sought.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"More compelling than the foregoing considerations, however, is the factor of similarity between the prior robbery and the offense for which defendant was on trial. Although two prior convictions for conduct dissimilar to that charged were available for purposes of impeachment, the judge chose to exclude those and to admit the one prior which had the potential to lead the jury to identify the charged misconduct with the prior conviction. Moreover, in terms of relevance to honesty and credibility certainly the value of a robbery conviction is not of greater weight when compared to defendant's 1971 conviction for forgery of a credit card. We observed in *Beagle* that *prior convictions for the same crime should be admitted sparingly. (People* v. *Beagle, supra,* 6 Cal.3d 441, 453.) With dissimilar priors available reason fairly dictated that the trial court exclude defendant's robbery conviction as a showing of defendant's possible dishonesty could have been accomplished by use of his far less prejudicial forgery conviction. By selecting the robbery as the prior conviction for purposes of impeachment, the court thus acted in a manner directly contrary to the admonishment.

". . . . . . . . . . . . . . .

"... As a general rule, convictions which are assaultive in nature do not weigh as heavily in the balance favoring admissibility as those convictions which are based on dishonesty or some other lack of integrity. Nor do prior convictions which are dissimilar to the crime charged weigh as heavily in the balance favoring exclusion as those which are the same as or similar to the crime charged. *The temporal nature of the prior conviction* may affect the balance either for or against admissibility—a recent conviction of a dissimilar crime grounded on a dishonest act would add weight in favor of admissibility, but a recent conviction of a similar, assaultive crime would add weight in favor of exclusion as the prejudicial effect would therefore be even greater.

"Perhaps the most difficult to evaluate of the *Beagle* factors is the adverse effect on the administration of justice should a defendant elect not to testify for fear of impeachment. Such an evaluation must necessarily depend in large part on the totality of other evidence bearing on the question of the defendant's guilt in the unique circumstances of the particular case. The trial court may be aided in making such evaluation should the defendant in support of his motion to exclude prior convictions make an offer of proof as to matters to which he will testify should the motion be granted. However, such an offer, although doubtless helpful to the court, is not a *sine qua non* to the court's duty to evaluate probative value against prejudicial effect and *where as in the instant case the other Beagle factors dictate the exclusion of a prior conviction or convictions because their prejudicial effect manifestly overbalances their probative value it is an abuse of discretion to deny the motion to exclude.* [Fns. omitted.]" (Italics added.) (16 Cal.3d at pp. 219, 220, 222.)

The court also expressly disapproved *People* v. *Hayden,* 30 Cal.App.3d 446 [106 Cal.Rptr. 348], wherein the trial court refused to exclude an armed robbery conviction when defendant was charged with armed robbery in three counts, and *People* v. *Delgado,* 32 Cal.App.3d 242 [108 Cal.Rptr. 399], wherein the court refused to exclude recent priors of forcible rape and attempted forcible rape where defendant was charged with assault with intent to rape and attempted forcible rape. It likewise disapproved the "progeny" of those cases.[2]

[2]This appears to be a reference to the following cases cited at page 221 of the *Rist* opinion: *People* v. *Stewart,* 34 Cal.App.3d 244 [109 Cal.Rptr. 826]; *People* v. *Jackson,* 37 Cal.App.3d 496 [112 Cal.Rptr. 411]; and *People* v. *Wingo,* 34 Cal.App.3d 974 [110 Cal.Rptr. 448]. Each of these cases also affirmed the trial court rulings permitting impeachment by proof of convictions of the same or similar crimes to the one charged.

Under the principles declared in *Rist,* the People should not have been permitted to prove defendant's 1969 convictions. Such convictions were not admissible to prove an element of the charged offense. (See *Rist,* 16 Cal.3d at p. 222, n. 10.) The offense for which defendant was on trial was identical to the 1969 robbery and the 1969 conviction for theft from the person was closely similar. Though the convictions were not remote in time, they antedated the offense charged by five years and their impeachment value was thus diminished to a degree. (Cf. *People* v. *Antick,* 15 Cal.3d 79, 98-99 [123 Cal.Rptr. 475, 539 P.2d 43].) The decision in *Rist* compels us to conclude that it was an abuse of discretion to allow proof of these convictions.

We do not, however, believe that the trial court was powerless under the circumstances of this case to deny to defendant that "false aura of veracity" of which the court said in *Beagle:* "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The general rule is that felony convictions bearing on veracity are admissible." (6 Cal.3d at p. 453.) Both of the convictions were of crimes which "rest on dishonest conduct." They were not so remote in time that their probative value for impeachment was destroyed. Under such circumstances, an appropriate manner of handling the matter would be for the court to permit proof by defendant's admission (or by an expurgated version of the judgment) of the fact of defendant's conviction of a felony, without specifying any further details. In *People* v. *Obie,* 41 Cal.App.3d 744, 752-753 [116 Cal.Rptr. 283],[3] this procedure was adopted. In affirming, the court said: "The court did not err in having defendant admit a single prior felony conviction, the details of which were not disclosed." (41 Cal.App.3d at p. 753; *cf.* comment in *People* v. *Taylor,* 46 Cal.App.3d 513, 536 [120 Cal.Rptr. 762].) The procedure approved in *Obie* protects a defendant against prejudice arising out of the similarity between the prior conviction and the offense charged. The risk of the jury assuming the conviction is for a crime more damaging to defendant than the one of which he was in fact convicted can be avoided by permitting the defendant at his election to require specification of the crime or crimes upon which impeachment is based, and in the absence of such specification by admonishing the jury not to speculate that any particular felony is involved.

■ Last, we must determine the prejudicial effect of this error. In *Rist,* defendant's conviction was reversed, the court stating that in the

---

[3]*People* v. *Obie* is cited by the majority in *Rist* without mentioning this aspect of the decision. (16 Cal.3d at p. 221.)

absence of defendant's testimony it was not possible to determine "the degree of prejudice suffered by defendant." (16 Cal.3d at p. 223.)

In this case, defendant testified. Ms. Spencer, the complaining witness, unequivocally identified defendant in court. She did not, however, remember if the robber had a moustache or beard, she did not see the robber drop the purse, and in pursuing the robber she lost sight of him for a few seconds. While she testified that very few people were in the area, defendant testified that the area was quite crowded since people were seeking admission to the free ninth race. Defendant denied any involvement in the crime and stated he could not run in his platform shoes; moreover, when apprehended, one of his shoe heels did come off.

In such a situation, where defendant's liberty rests on his credibility to the jury, we must take cognizance of the fact that "[a] jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely commited the crime charged." (*People* v. *Rist, supra,* 16 Cal.3d at p. 219.) This factor is particularly significant when, as here, the jury was not instructed to resist that pressure. CALJIC No. 2.23, which would have limited the jury's consideration of defendant's conviction solely to the "purpose of determining the credibility of that witness," was not given. The failure to give such instruction when evidence of a defendant's conviction has been received has been held error, though not necessarily reversible error. (*People* v. *Mayfield,* 23 Cal.App.3d 236 [100 Cal.Rptr. 104].) The absence of such instruction in this case substantially enhances the likelihood that the jury erroneously considered defendant's prior convictions as evidence that he "likely committed the crime charged." We are further impelled to this conclusion by the fact that the jury took one and one-half days to resolve the conflict between the testimony of defendant and that of Ms. Spencer and requested the court to reread certain portions of their respective testimony.

A similar situation arose in *People* v. *Wagner,* 13 Cal.3d 612 [119 Cal.Rptr. 457, 532 P.2d 105]. In *Wagner,* defendant's conviction of selling marijuana (Health & Saf. Code, § 11360) was based on the testimony of the two arresting state narcotics officers. Defendant had testified and denied complicity in the crime. Defendant's credibility was impeached through improper cross-examination. Despite the fact that the jurors were admonished to disregard this improper cross-examination, the court found such error to be prejudicial, stating (13 Cal.3d at p. 621): "In light of the foregoing record, it is apparent that the question of defendant's

guilt depended to a very large degree on the jury's determination of the relative credibility of the witnesses. The highly prejudicial implications arising from the questions asked of defendant on cross-examination could serve only to reduce and impair his credibility and to present him to the jury as a person of criminal tendencies. (See *People* v. *Sawyer,* 256 Cal.App.2d 66, 77 [63 Cal.Rptr. 749]; cf. *People* v. *Ortega,* 2 Cal.App.3d 884, 902 [83 Cal.Rptr. 260].) Since the resolution of defendant's guilt or innocence turned on his credibility *vis-à-vis* that of the prosecution witnesses, the case comes within the rule that a miscarriage of justice has occurred when the case is closely balanced and the acts of misconduct are such as to have contributed materially to the verdict. (*People* v. *Perez, supra,* 58 Cal.2d 229, 247; *People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556]; *People* v. *Covert, supra,* 249 Cal.App.2d 81, 91.) In this case we conclude that it is reasonably probable that the verdict would have been in defendant's favor if the prosecution had not implied, through improper cross-examination, that the defendant had previously engaged in similar illegal acts."

As in *Wagner,* when the issue turns upon the credibility of the defendant, and substantial divergence in testimony exists, we must find that error was "such as to have contributed materially to the verdict." (*Id.*)

The judgment is reversed and remanded for further proceedings in conformity with the views above expressed.

Cobey, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied May 12, 1976, and respondent's petition for a hearing by the Supreme Court was denied July 1, 1976.