[Crim. No. 32920. Second Dist., Div. Four. Feb. 8, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW THOMAS COLEMAN, Defendant and Appellant.

314

## COUNSEL

Michael W. McIsaac, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—In an information, defendant was charged with committing three felonies on June 7, 1977. In count I, defendant was charged with committing forcible rape, in violation of Penal Code section 261, subdivision 3. In count 2, he was charged with committing the felony of forcible oral copulation in violation of Penal Code section 288a, subdivision (c). In count 3, he was charged with committing burglary in

violation of Penal Code section 459. As a part of the burglary count, it was alleged that he entered premises in Bellflower with the intent to commit the felony of rape. Defendant entered a plea of not guilty and was tried by a jury.

The jury found defendant guilty as charged in all three counts. The burglary offense was fixed as burglary of the first degree. Probation was denied and defendant was sentenced to state prison for the term prescribed by law with the sentences on counts 1 and 2 to run concurrently. The sentence on count 3 was ordered stayed pending final judgment with respect to counts 1 and 2, at which time the sentence on count 3 would be permanently stayed. Defendant has appealed from the judgment of conviction.

I

*The Factual Background*

The victim of the alleged three offenses was Nina, a 54-year old female divorcee. Although all three offenses occurred on June 7, 1977, Nina testified on direct examination that in February 1977, on a Sunday evening, defendant came to her home in Bellflower. Defendant was admitted to her home as he indicated that he had news about Nina's son, who had recently been arrested.

Defendant and Nina sat on the couch on this occasion. She related that defendant suddenly grabbed her and said: "I'm going to rape you." Defendant then grabbed her by the shoulders and threw her to a prone position on the couch. He then told her that she had better cooperate. Next defendant placed his hands at her throat; she screamed. Nothing further occurred and defendant left shortly thereafter. No one responded to Nina's screams. Nina testified that she reported the incident to her daughter and a friend, but decided not to call the police.

On June 7, 1977, Nina was alone in her apartment and had gone to bed between midnight and 1 a.m. She was suddenly awakened by the shaking of the bed and saw defendant standing in her bedroom. He was dressed in bib overalls, which was the way he was dressed at the time of the February 1977 incident. Nina testified that she asked defendant: "What are you doing here, and how did you get in here?" Defendant replied: "I came to rape you."

Nina stated that defendant took off his bib overalls, threw back the covers and removed her nightgown over her head. She testified that defendant told her that she had better cooperate because it would be easy to break her neck; that defendant grabbed her by the shoulders as he made these statements. Nina testified that she became very frightened and therefore did not physically resist. Defendant then masturbated himself, fondled her breasts, and pushed her head down toward his penis so that she was required to orally copulate defendant.

Nina further testified that defendant then had regular intercourse with her. After completion of the sexual intercourse, defendant laid back on the bed and began talking about Nina's son and daughter. Nina attempted to leave the bed, but defendant told her to stay right there. Finally, Nina told defendant that she had to go to work the next day; defendant then put on his overalls and walked out of the bedroom. She observed the defendant leave her apartment through a window in the living room area.

The police were called and observed smudges on the inside of the window from which defendant left the apartment. There was testimony that the window itself appeared to have been tampered with.

Defendant testified in his defense that he had been a friend of Nina's son for 12 years. He testified that he had gone to Nina's apartment in February, but that on that occasion Nina invited him into her bedroom and consented to an act of intercourse which occurred in the bedroom. He denied making any threats or using any force as testified to by Nina. Defendant testified that after the act of intercourse in February 1977, Nina asked him whether he wished to return some time.

Defendant testified that in June 1977, he again visited the apartment of Nina and another consensual act of sexual intercourse occurred on that occasion. Defendant denied making any threats or using any force or committing any act of oral copulation with Nina.

II

*Statement of Alleged Errors*

Defendant asserts that the following errors occurred in the trial below: 1. The trial court erred in permitting defendant's impeachment by use of a prior burglary conviction. 2. The trial court erred in giving CALJIC

instruction No. 2.50. 3. The evidence was insufficient to support defendant's convictions for rape and oral copulation. 4. Defendant's conviction of burglary is based solely upon the inherently improbable testimony of Nina.

## III

### The Use of a Prior Burglary Conviction to Impeach Defendant as a Witness

At the conclusion of defendant's direct examination, the prosecutor advised the trial court, out of the presence of the jury, that he intended to attack defendant's credibility by establishing that, approximately five months prior to the date of trial, defendant had been convicted of a felony—a burglary involving a theft of stereo equipment. Defendant's objection to the use of such felony conviction was overruled. On cross-examination, in answer to the prosecutor's questions, defendant testified that he had previously been convicted of a burglary that involved a theft. The prosecutor did not seek to establish the date of the burglary.

Defendant contends that the impeachment use of the burglary conviction was in violation of the principles set forth in *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], and *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833]. The thrust of defendant's argument is to the effect that the guidelines set forth in *Beagle* and *Rist* mandated an exclusion of the defendant's burglary conviction because (1) the felony of burglary of which defendant was convicted is very similar to the burglary charged against defendant in the instant case, and (2) the prior felony conviction was of recent origin— only five months prior to the date of trial.

We start our discussion with the principle that the *Beagle* and *Rist* cases constitute judicial interpretations of Evidence Code section 352, which provides that the trial court may exclude proffered evidence if its probative value is substantially outweighed by, among other things, a danger of undue prejudice to a party. The *Beagle* and *Rist* courts set forth guidelines to enable the trial judge to exercise properly his discretion under Evidence Code section 352 when impeaching evidence is offered in the form of the witness' prior conviction of a felony.

Under the principles set forth in *Beagle* and *Rist,* certain factors point toward exclusion of the impeachment evidence and certain factors point

toward admissibility. Thus, a felony offense that involves character traits of *dishonesty* or *untruthfulness* has substantial probative value for witness impeachment and points towards admissibility because these two character traits are the most relevant character traits to attack the credibility of a witness. (See Evid. Code, § 786.) Similarly, a felony conviction that is close in time to the date of the charged offense has greater probative value for impeachment purposes than a felony conviction which is remote in time.

The probative value of a burglary conviction for impeachment purposes depends upon the *intent* element of the burglary. An entry in a building with the intent to commit rape constitutes a burglary with little probative value for witness impeachment, since such a burglary does not involve the character trait of dishonesty or untruthfulness. However, a burglary in which the entry is made with the intent to commit theft does have substantial probative value for impeachment purposes since the theft intent connotes the character trait of dishonesty.

In the case at bench, therefore, the prior burglary involving an intent to commit theft is a felony conviction with substantial probative value for witness impeachment purposes. Because of the nearness of time of the prior burglary to the date of the offenses charged against defendant, the probative value of the prior burglary conviction cannot be discounted because of the element of remoteness from the date of the charged offenses.

The most serious element which points toward a rule of exclusion of a felony conviction proffered to impeach a defendant as a witness is that of a felony conviction which is *similar* to the offense charged. In *People* v. *Banks* (1976) 62 Cal.App.3d 38, 44-45 [132 Cal.Rptr. 751], we pointed out the serious danger of unfairness and prejudice to a defendant from the use of such a felony conviction: " 'A jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged.' (*Rist, supra,* 16 Cal.3d 211, at p. 219.) This statement from *Rist* epitomizes the manifest danger to a defendant from evidence of a felony conviction introduced to attack his credibility. It is this danger of misuse by the jury of the evidence of a felony conviction, offered to impeach a criminal defendant as a witness, that requires the trial judge to exercise sound discretion under Evidence Code section 352 in making a determination whether to admit or exclude the proffered felony-conviction evidence in the face of a defendant's objection based on *Beagle* and

Evidence Code section 352. The real key to sound judicial discretion is that ' "[i]t imports the exercise of discriminating judgment within the bounds of reason." ' (*In re Cortez* (1971) 6 Cal.3d 78, 85 [98 Cal.Rptr. 307, 490 P.2d 819].)"

In the case before us, defendant asserts that, since one offense charged against him was a burglary, the use of the prior burglary conviction to impeach him as a witness ought to have been excluded in light of the great danger of prejudice as expressed in the *Rist* case. We do not believe, however, that such a danger exists in the case before us because the burglary alleged in the information is that of a burglary with an intent to commit rape, while the prior felony burglary was one in which the intent involved was that of committing theft. Although the two offenses have the common name of "burglary," the differences in the *intent* making up the two offenses lead to the conclusion that the two are *not* substantially similar offenses for the purpose of the issue of the rules for exclusion of a prior felony conviction proffered to impeach a defendant as a witness. There is not a substantial likelihood that a jury would misuse the felony conviction evidence and conclude that because defendant committed a burglary with intent to commit theft at some point in the past, he therefore committed the burglary charged of an entry into the victim's home with the intent to commit rape.

We conclude, therefore, that the trial court did not abuse its discretion under Evidence Code section 352 and the principles set forth in *Beagle* and *Rist* in permitting the prosecution to introduce evidence that defendant had previously been convicted of the felony of burglary that involved the intent to commit theft. The major consideration that leads us to this conclusion is the substantial *dissimilarity* between the two burglaries.

Because of the substantial dissimilarity between the prior felony of burglary and the burglary for which defendant was on trial, the instant case does not present the issue of the extent of the trial judge's discretion under *Beagle, Rist* and Evidence Code section 352 to exclude a felony conviction offered for impeachment purposes, when a defendant has been convicted of only *one* prior felony and that felony is of *recent* origin and *similar* to the offense for which the defendant is on trial.

## IV

### *The Validity of CALJIC Instruction No. 2.50 (1977 Revision) Under the Circumstances Involved in This Case*

 Defendant advances the contention that it was error for the trial court to give CALJIC instruction No. 2.50 (1977 revision), which deals with the subject of evidence of other crimes. This instruction as given by the court reads as follows: "Evidence has been received tending to show that the defendant committed a crime other than that for which he is on trial. [¶] Such evidence was not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes. [¶] Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show one or more of the following: [¶] The identity of the person who committed the crime, if any, of which the defendant is accused; [¶] A motive for the commission of the crime charged; [¶] The existence of the intent which is a necessary element of the crime charged." The position of the defendant is that this instruction was erroneous under the circumstances of the instant case because it told the jury that defendant's prior conviction of burglary involving an intent to steal could be used to help establish defendant's identity as the perpetrator of the charged offenses or to establish a motive for defendant's commission of the charged offenses or to establish that defendant had the criminal intent necessary for the crimes charged against defendant.

If CALJIC instruction No. 2.50 were to be understood by the jury as referring to the evidence of defendant's prior conviction of burglary, the instruction would be erroneous and prejudicial. Although it is proper for the jury to be instructed on points of law appropriate to the evidence presented (*People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913]), it is error to give an instruction that pertains to an issue not before the jury or an issue not supported by the evidence. Thus, in the case before us, the identity of the perpetrator of the charged offense is not an issue. Defendant's identity as the person present in the apartment of the victim on the date in question is not disputed. Evidence presented on a *nondisputed* issue is irrelevant and, hence, *inadmissible,* as only relevant evidence is admissible in a trial. (See Evid. Code, §§ 210, 350; *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022].)

█ It seems equally clear that defendant's prior conviction of burglary—a felonious entry to commit theft—can have no relevancy to establish a motive for commission of the charged crimes of either forcible rape, forcible oral copulation, or burglary with intent to commit rape. Nor can proof of defendant's intent to commit theft involved in the prior burglary have any tendency in reason to establish the intent to commit rape involved in the burglary charged or the criminal intent required for the offenses of forcible rape or forcible oral copulation.

The People make the argument that CALJIC instruction No. 2.50 was given in the instant case to apply to the evidence that defendant had committed the offense of attempted rape on the same victim in February 1977 as being relevant to establish defendant's motive for the commission of the charged rape and to establish the "intent to rape" involved in the charged burglary. It is the People's position that CALJIC instruction No. 2.50 was not intended by the court to have any reference to defendant's burglary conviction, offered for witness-impeachment purposes, and that the jury should not have been misled into applying, or seeking to apply, CALJIC Instruction No. 2.50 to the evidence of defendant's prior felony conviction.

The People point out that the trial judge gave CALJIC instruction No. 2.20, relating to credibility of witnesses, which told the jury that in determining the credibility of a witness it could consider various matters, including "[h]is prior conviction of a felony," and CALJIC instruction No. 2.23, relating specifically to the conviction of a felony as affecting the credibility of a witness. CALJIC instruction No. 2.23, given by the trial court, was as follows: "The fact that a witness had been convicted of a felony, if such be a fact, may be considered by you only for the purpose of determining the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness' credibility. It is one of the circumstances that you may take into consideration in weighing the testimony of such a witness."

We conclude that since the trial court gave CALJIC instructions Nos. 2.20 and 2.23, there appears little likelihood that the jury could have been confused and believed that CALJIC instruction No. 2.50 was intended to refer to defendant's prior felony conviction. █ "It is elementary, requiring no citation of authority, that instructions must be viewed as a whole and in light of other instructions given by the court to the jury." (*People* v. *Russell* (1971) 22 Cal.App.3d 330, 336 [99 Cal.Rptr. 277].) It was aptly said in *People* v. *Romo* (1975) 47 Cal.App.3d 976, 990 [121

Cal.Rptr. 684]: "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole. We must also assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given."

■ Since the trial judge gave CALJIC instructions 2.20 and 2.23, we must reject defendant's contention that the jury probably considered CALJIC instruction No. 2.50 as applying to the felony conviction evidence.

It is to be noted that no objection was raised by defendant to the prosecution's introduction of evidence of defendant's commission of the uncharged prior offense of attempted rape of the victim in February 1977 as part of the prosecution's case in chief. We are thus not called upon to determine whether such evidence was properly admitted. (See Evid. Code, § 1101.) Nevertheless, the evidence of defendant's prior attempted rape of the same victim, Nina, was certainly relevant on the contested issues of defendant's intent upon entry into Nina's apartment in June 1977, and to establish his motive to commit rape as some proof that he acted in conformity with such motive and committed forcible rape upon Nina.

■ But since defendant's identity as the perpetrator of the offenses charged against him was not in issue, the trial judge should have stricken from CALJIC instruction No. 2.50 that portion which indicated that evidence of defendant's commission of a prior crime could be used for the purpose of establishing defendant's identity as the perpetrator of the charged crimes. We conclude, however, that any error in giving that portion of the instruction which related to the issue of "identity" was not such as to have misled the jury with respect to any contested issue, and, hence, comes within the concept of nonprejudicial error.

V

*Sufficiency of the Evidence to Sustain*
*Defendant's Convictions of Rape*
*and Oral Copulation*

Defendant asserts that the evidence in the case before us was insufficient to support his convictions of the offenses of rape and oral copulation. The main thrust of defendant's argument on this point is that

the evidence was insufficient to justify a finding that Nina was "prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution"—necessary elements required by Penal Code section 261, subdivision 3, which defines the rape offense of which defendant was convicted, and that the evidence could not justify a finding that defendant "compelled the participation of another person [Nina] in an act of oral copulation by force, violence, duress, menace, or threat of great bodily harm," as required by Penal Code section 288a, subdivision (c), which defines the offense of oral copulation of which defendant was convicted.

■ In considering the appellate issue of sufficiency of the evidence to sustain a conviction, we are guided by the principle that "in reviewing a criminal conviction on appeal to determine whether the record contains any substantial evidence tending to support the finding of the trier of fact, and in considering this question we [the appellate court] must view this evidence in the light most favorable to the finding. [Citation.]" (*In re Roderick P.* (1972) 7 Cal.3d 801, 808 [103 Cal.Rptr. 425, 500 P.2d 1].) ■ We recognize also that " ' "in determining whether the record is sufficient in this respect the appellate court can give credit only to 'substantial' evidence, i.e., evidence that reasonably inspires confidence and is 'of solid value.' " ' " (*In re Roderick P., supra,* 7 Cal.3d 801, 809.)

■ Defendant asserts that the only threat established by the evidence was the single statement made by defendant to Nina that it would be easy to break her neck. Defendant points to the fact that Nina's nightgown was removed and not torn off and that the bed covers were pulled down—not torn away—and that there was no evidence that defendant possessed any type of weapon or that defendant made any threatening gesture.

We know of no rule of law that holds that a single threat of serious bodily harm is insufficient to sustain a conviction of forcible rape, effectuated by causing the victim to desist from resisting defendant's act of sexually molesting the victim's body. It has been said that "[a] threat may be expressed by acts or conduct as well as by words. [Citation.] Submission through fear is not consent." (*People* v. *Winters* (1958) 163 Cal.App.2d 619, 623 [329 P.2d 743].) In the case at bench, the victim's failure to resist was well justified on the basis of defendant's words about breaking the victim's neck, as well as the victim's recollection of defendant's acts four or five months earlier when he threw her down upon the couch and grabbed her by the throat. The jury as the trier of fact was not required to believe defendant's version of a consenting

victim to the acts of sexual intercourse and oral copulation. ■ "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." (*People* v. *Robillard* (1960) 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; see *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

Our task as a reviewing court is simply to determine "whether a reasonable trier of fact *could* have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt." (*Reilly, supra,* 3 Cal.3d 421, 425.) (Italics added.) We hold that the evidence was amply sufficient to sustain defendant's conviction of the offenses of forcible rape and forcible oral copulation.

## VI

*Sufficiency of the Evidence to Sustain
Defendant's Conviction of Burglary*

Defendant's contention that the evidence was insufficient to sustain his conviction of burglary is predicated upon the theory that Nina's testimony regarding defendant's method of entry into her apartment was inherently improbable. Defendant claims that Nina's testimony that she observed defendant leave through a living room window was inherently improbable because of other testimony of Nina that she had locked this window prior to retiring on the night in question.

■ In determining whether testimony or evidence is inherently improbable, we apply the following rules: " 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] ■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]' " (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267]; see also *People* v. *Mayberry* (1975) 15 Cal.3d 143, 150 [125 Cal.Rptr. 745, 542 P.2d 1337].)

Even though Nina testified that she had locked the living room window prior to retiring, she saw defendant leave through that window after the commission of the charged offenses. Evidence established that the window was a sliding glass window, the screen had been removed from the window frame, and the window, upon examination after the event, gave an appearance that it had been "sprung." From this evidence the jury may well have concluded that Nina had not locked the window as she believed she had, or that the window had not been locked securely, and that defendant had been able to open the partially locked or unlocked window with his bare hands. Considering all of the testimony of Nina, we conclude that there was no manifest falsity or physical impossibility in the evidence pointing to how defendant gained entrance into her apartment—a type of entry which made such entry a felonious act.

The judgment is affirmed.

Kingsley, Acting P. J., and Alarcon, J., concurred.