168 Cal.App.3d 262 (1985)
214 Cal. Rptr. 105
THE PEOPLE, Plaintiff and Respondent,
v.
ALFRED RODRIGUEZ ALMAREZ, Defendant and Appellant.
Docket No. B005968.
Court of Appeals of California, Second District, Division Four.
May 16, 1985.
*263 COUNSEL
Michael S. Mink, under appointment by the Court of Appeal, for Defendant and Appellant.
*264 John K. Van de Kamp, Attorney General, and Shunji Asari, Deputy Attorney General, for Plaintiff and Respondent.
OPINION
WOODS, P.J.
Alfred Rodriguez Almarez is appealing his conviction for burglary (Pen. Code, § 459), for which he was sentenced to the high term of six years in prison. He contends: I. His Penal Code section 995 motion should have been granted due to insufficient evidence at the preliminary hearing. II. The trial court should have granted his motion to dismiss for lack of a speedy trial. III. The trial court should have instructed on trespass. IV. The trial court should have granted his motion to preclude impeachment with his prior felony convictions in the event he testified. (People v. Beagle (1972) 6 Cal.3d 441 [99 Cal. Rptr. 313, 492 P.2d 1].)
We reverse on the ground that the trial court's failure to exercise its discretion to exclude the prior felony convictions (People v. Castro (1985) 38 Cal.3d 301 [211 Cal. Rptr. 719, 696 P.2d 111]) was prejudicial as it resulted in appellant's failure to testify (People v. Rist (1979) 16 Cal.3d 211 [127 Cal. Rptr. 457, 545 P.2d 833]).
At the trial, David Gladding testified that he returned from work on August 22, 1983, to discover that his apartment had been ransacked. The bedroom window was broken, as if someone had taken a crowbar and placed it between the window and jamb in several locations. Part of the window frame and most of the broken glass from the window were inside the bedroom. Later he discovered that a military duffel bag and some tools were missing. Appellant's fingerprint was found on a piece of broken glass in the bedroom.

I
(1) Appellant contends that his motion pursuant to Penal Code section 995 should have been granted due to insufficiency of the evidence at the preliminary examination. According to that evidence, when David Gladding returned to his apartment on the evening of August 22, 1983, he discovered that drawers had been opened, objects thrown around, and property taken. The bedroom window and its surrounding frame had been "busted out." Appellant's fingerprint was on the exterior portion of a glass fragment the police removed from the bedroom.
That evidence justified denial of the section 995 motion, as it provided a rational ground for assuming that a burglary had been committed and that *265 appellant was guilty of it. (Williams v. Superior Court (1969) 71 Cal.2d 1144, 1147-1148 [80 Cal. Rptr. 747, 458 P.2d 987].)

II
We also reject appellant's contention that the trial court should have granted his motion to dismiss for lack of prosecution.
The burglary occurred on August 22, 1983. Appellant was arrested on a parole violation either between August 22 and 24, as he testified, or on August 26, as Police Detective Carlisle testified. The municipal court complaint was filed on August 29, 1983. Detective Carlisle obtained an arrest warrant for appellant that same day. Before obtaining the warrant, he checked the county jail system to see if appellant was already in custody. He got a negative response, apparently because appellant had used a different middle name when he was arrested.[1] Upon obtaining the warrant, Detective Carlisle and four undercover officers staked out appellant's last known address for three days, to no avail. They waited for appellant to be picked up on the warrant.
On January 4, 1984, Chino prison personnel informed Detective Carlisle that they had found the warrant and had appellant in their custody. Since the prison refused to send appellant out until his parole violation time was over, Detective Carlisle got a court order to secure appellant's presence for arraignment. The record does not show the date of the arraignment, but the preliminary hearing occurred on March 1, 1984. The information was filed March 15, 1984, and trial began May 14, 1984.
Postcomplaint, preinformation delay such as this requires weighing the prejudicial effect of the delay against any justification for it. (Scherling v. Superior Court (1978) 22 Cal.3d 493, 504 [149 Cal. Rptr. 597, 585 P.2d 219]; Jones v. Superior Court (1970) 3 Cal.3d 734, 740 [91 Cal. Rptr. 578, 478 P.2d 10].) Appellant testified that he had been in custody since his August arrest. He was told on January 4, 1984, that his "custody had been raised," but did not know what that meant, and did not learn of this charge until the preliminary hearing in March. He then tried to contact five people who were with him when he was arrested on August 22. They had all moved. He believed that if he had been able to contact them, they could have testified to his whereabouts on the day of the crime. (2) Assuming arguendo that appellant was prejudiced by the six-month delay between the *266 filing of the complaint and the preliminary hearing,[2] that delay was primarily caused by his own act of giving an alias when he was arrested. Detective Carlisle acted promptly by immediately checking the jail system, seeking a warrant, and staking out appellant's last known address. The prosecution thus demonstrated enough justification to outweigh any prejudice appellant may have suffered. (People v. Benavidez (1979) 92 Cal. App.3d 264, 266-268 [154 Cal. Rptr. 552].)

III
(3) The trial court refused to instruct on trespass as a lesser included offense on the ground that the record did not contain sufficient evidence to indicate that trespass was the defense theory of the case. That ruling was correct.
In People v. Geiger (1984) 35 Cal.3d 510 [199 Cal. Rptr. 45, 674 P.2d 1303], the Supreme Court found that requested defense instructions on vandalism should have been given in a burglary prosecution where there was evidence that the defendant broke a window but a conflict as to what his intent had been at the time. As Geiger explained: "[T]he first prerequisite to receiving instructions on lesser related offenses must be the existence of some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged." (Id., at p. 531.) There was no basis here under which the jury could have found trespass and not burglary, as some of Mr. Gladding's property was taken at the time the window was broken.

IV
After the prosecution rested, defense counsel moved to preclude impeachment with his prior convictions in the event he testified. (People v. Beagle, supra, 6 Cal.3d 441.) The prosecutor sought to utilize a 1979 burglary conviction and a 1971 forgery conviction. The trial court ruled that both *267 priors could be used as it believed it had no discretion subsequent to Proposition 8. As a result of that ruling, appellant did not testify.[3]
In People v. Castro, supra, 38 Cal.3d 301, the trial court similarly stated that it lacked discretion to prevent such impeachment following passage of article I, section 28, subdivision (f) of the California Constitution as part of Proposition 8. (4) The Supreme Court held that a trial court's discretion under Evidence Code section 352 survives Proposition 8 and that, subject to that discretion, subdivision (f) authorizes the use of any felony conviction which necessarily involved moral turpitude, even if the immoral trait did not involve dishonesty.
Under Castro, we must consider whether the forgery and burglary priors involved moral turpitude. Neither crime was involved in Castro. However, Castro suggested in a footnote that guidance on the moral turpitude question could be obtained from the existing bodies of law. (38 Cal.3d at p. 316, fn. 11.) The court gave two examples: (1) An annotation at 23 A.L.R.Fed. 480 entitled, "What Constitutes `Crime Involving Moral Turpitude' Within Meaning of §§ 212(a)(9) and 241(a)(4) of Immigration and Nationality Act (8 USCS §§ 1182(a)(9), 1251(a)(4), and Similar Predecessor Statutes Providing for Exclusion or Deportation of Aliens Convicted of Such Crime)"; and (2) 1 Witkin, California Procedure (3d ed. 1985) Attorneys, section 375, page 424.
Both the annotation and Witkin citations make it clear that forgery is a crime of moral turpitude. Section 11 (f) of the annotation states: "It is generally held that forgery, in all its degrees, involves an intent to defraud, and is thus a crime of moral turpitude." (Annot., 23 A.L.R.Fed. at p. 541.) And Witkin cites In re Rothrock (1940) 16 Cal.2d 449, 454 [106 Cal. Rptr. 907, 131 A.L.R. 226], wherein the court stated: "In cases such as those involving convictions of murder, forgery, extortion, bribery, perjury, robbery, embezzlement and other forms of theft, no difficulty would attend the determination of the question of moral turpitude from a consideration of the record of conviction alone." Indeed, Moura v. State Bar (1941) 18 Cal.2d 31, 32 [112 P.2d 629], specifically held that a forgery conviction justified disbarment as it showed a lack of good moral character.
The burglary prior presents a more complex issue. Our Supreme Court has held that burglary represents the type of moral turpitude which justifies disbarment. (In re Hurwitz (1976) 17 Cal.3d 562, 568 [131 Cal. Rptr. 402, 551 P.2d 1234]; Emslie v. State Bar (1974) 11 Cal.3d 210, 230 [113 *268 Cal. Rptr. 175, 520 P.2d 991].) However, as appellant points out, burglary in California requires an entry "with intent to commit grand or petit larceny or any felony. ..." (Pen. Code, § 459; italics added.) Thus, the underlying specific intent for burglary does not necessarily involve an intent to defraud or any form of theft. Moreover, under Castro, it is not possible to go behind the fact of a conviction to receive evidence on its underlying facts. (People v. Castro, supra, 38 Cal.3d at pp. 316-317.)
We are assisted by the A.L.R.Fed. annotation, which indicates that burglary or the related offense of unlawful entry with intent to commit either a larceny or a felony has generally been held to involve moral turpitude. (Annot., 23 A.L.R.Fed. at p. 536.) This is consistent with the frequently applied rule that convictions involving criminal intent show moral turpitude. (Annot., 23 A.L.R.Fed. at p. 489.) We thus find that appellant's prior conviction for burglary involved moral turpitude.
(5) Although both of appellant's prior convictions here met the requirement of moral turpitude, it is clear, under Castro, that the trial court erred in failing to exercise its discretion as to their admissibility. Because the 1979 conviction was for a crime identical to the charged offense, it might have been excluded by the trial court. And it is possible that the trial court might have considered the 13-year-old forgery too remote.
The Castro court utilized the Watson standard in determining the prejudice from this type of error. (People v. Castro, supra, 38 Cal.3d at p. 319.) Significantly, the defendant took the witness stand in Castro despite the Beagle ruling. It has long been the rule that the Watson standard applies to Beagle error where the defendant testifies. (People v. Rollo (1977) 20 Cal.3d 109, 121 [141 Cal. Rptr. 177, 569 P.2d 771].) On the other hand, where a defendant has not testified, the Supreme Court has prescribed the standard of reversible error per se. (People v. Rist, supra, 16 Cal.3d at p. 223; People v. Kyllingstad (1978) 85 Cal. App.3d 562, 570 [149 Cal. Rptr. 637].)[4] The question here presented is whether the reversible per se rule, where a defendant does not testify, survives Proposition 8. We are convinced that the answer is yes.
In utilizing the reversible per se standard, Rist explained: "[A]lthough in the instant case [the victim's] testimony constitutes substantial evidence of defendant's guilt of the robbery as charged, we cannot presume to know what defendant's testimony might have been had he testified, as might well *269 have happened had the court excluded his conviction for robbery. It is thus not possible for us to determine on the record before us the degree of prejudice suffered by defendant because of the court's error in failing to grant his motion, and the usual tests for concluding that an error requires the reversal of a judgment of conviction are not applicable. (See People v. Hill (1974) 12 Cal.3d 731, 769 [117 Cal. Rptr. 393, 528 P.2d 1.)" (People v. Rist, supra, 16 Cal.3d at p. 223.)
Similarly here, we do not know what appellant's testimony would have been. Under People v. Fries (1979) 24 Cal.3d 222, 232-233 [155 Cal. Rptr. 194, 594 P.2d 19], he was not required to make an offer of proof. We do not know what his explanation may have been for the presence of his fingerprint on the piece of glass in the apartment. (Cf. People v. Redmond (1969) 71 Cal.2d 745, 756 [79 Cal. Rptr. 529, 457 P.2d 321].) As we cannot determine the degree of prejudice, we are compelled to reverse.
Respondent proposes that instead of reversing we should remand for the purpose of a limited hearing at which the trial court could exercise its discretion in light of Castro. (See, e.g., People v. Ingram (1978) 87 Cal. App.3d 832, 843 [151 Cal. Rptr. 239] [remand for purpose of an in camera hearing to determine what an informant knew].) We reject the proposal as contrary to the procedure set forth in Rist.
The judgment is reversed.
McClosky, J., and Dunn, J.,[*] concurred.
A petition for a rehearing was denied June 5, 1985.
NOTES
[1] Appellant's rap sheet showed eight different aliases.
[2] The Attorney General argues that appellant failed to establish prejudice as his testimony did not inform the court "of... the nature of what [the missing witnesses'] testimony would have been, when they became unavailable, ...; nor did [he] disclose any facts indicating that these witnesses ... would have been available had criminal proceedings been reinstituted within a short time  that is, that the loss of evidence and unavailability of witnesses was caused by the prosecutorial delay." (People v. Sahagun (1979) 89 Cal. App.3d 1, 24 [152 Cal. Rptr. 233].) It appears clear to us that the missing witnesses would have been used to support an alibi defense, as appellant specifically testified they could have said where he had been on the day of the crime. And logically, if appellant was with the people on the date of his arrest, he would have had an easier time locating them if he had gone to trial soon after that arrest instead of months later.
[3] We reject respondent's contention that appellant waived this issue as appellant's counsel argued the issue "for the record" and thereby preserved it.
[4] The only exception of which we are aware is People v. Anjell (1979) 100 Cal. App.3d 189, 199 [160 Cal. Rptr. 669], in which the defendant's missing testimony was found to be simply corroborative of the abili to which the defense witnesses testified.
[*] Assigned by the Chairperson of the Judicial Council.