Filed 9/12/16  P. v. Estrada CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE RAUL ESTRADA,<br><br>    Defendant and Appellant. | B262904<br><br>(Los Angeles County<br>Super. Ct. No. GA093874) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cathryn F. Brougham, Judge.  Affirmed as modified.

Lori Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Raul Estrada appeals from a judgment entered after he pleaded no contest to receiving stolen property (Pen. Code, § 496, subd. (a))[1] and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and a jury found him guilty of second degree robbery (§ 211) and also found he used a handgun during the robbery (§ 12022.5, subd. (a)). After finding a prior prison term enhancement allegation to be true (§ 667.5, subd. (b)), the trial court sentenced him to eight years and eight months in prison.

Estrada contends the trial court erred (1) in admitting into evidence his mugshot photograph from his current arrest and a detective's testimony regarding how law enforcement identified him as a suspect and (2) in ruling he could impeach the robbery victim with only one of her prior convictions involving moral turpitude. He also contends the evidence supporting the firearm enhancement was insufficient. We reject his contentions and affirm the judgment as modified to reflect his sentence on the drug possession count.

## BACKGROUND

An information charged Estrada with second degree robbery (count 1), receiving stolen property (count 2), and possession of methamphetamine (count 3). Before trial on the robbery count and the firearm use enhancement alleged in the information, Estrada pleaded no contest to counts 2 and 3. The trial court continued sentencing on counts 2 and 3 until after the trial.

**Evidence and Trial**

The robbery victim, Octavia Clemons, testified she was waiting at a bus stop in Pasadena about 6:30 a.m. on May 18, 2014, when a man (later identified as Estrada) stole her cell phone. Clemons identified Estrada in court at trial as the man who robbed her. She was not acquainted with Estrada prior to the robbery.

Clemons was using her cell phone when Estrada approached the bus stop on a bicycle. He stood face-to-face with her, straddling his bicycle, and asked to borrow her

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

2

cell phone. She agreed, and he started providing a phone number for her to dial. After changing the digits of the phone number, he demanded, "Bitch, give me your phone or I am gonna blast you right here." He lifted his shirt, revealing what appeared to Clemons to be the black handle of a nine-millimeter handgun tucked into his waistband. Clemons had seen nine-millimeter handguns on other occasions prior to the date of this robbery. She felt afraid, believing Estrada would fire the gun. Estrada snatched the cell phone from her hand and ordered, "Don't fucking turn around or I am gonna fucking blast you, bitch." He left on his bicycle.

Clemons rode the bus for about five minutes to the next stop, then walked the half-mile to her home. She dialed 911 and provided a description of the man who had robbed her. The jury heard an audio recording of the 911 call. Officers responded to her home and interviewed her.

Later that day, Clemons requested that her wireless provider disconnect the service to the cell phone Estrada stole. She purchased a new cell phone and activated it, using the same phone number. "All night," she received calls on her new phone from people asking to speak with "Jose" (Estrada's first name) or "Stalker" (Estrada's admitted nickname). Clemons photographed the incoming call log on her new cell phone and provided the photos to the police.

In the evening after the robbery, Clemons accessed the social media Web site Facebook and was reviewing user profiles, when she observed a photograph of the man who had robbed her. She took "screen shots" of the Facebook photographs and provided them to the police.

Detective David Duran, the investigating officer on this case from the Pasadena Police Department, testified at trial that he conducted a "records check," using the name Jose and the birth date associated with the Facebook profile Clemons provided. The results of his search included photographs depicting the same person pictured in the Facebook photographs. Duran circulated a "wanted persons flier" with Estrada's photograph and "his last known address." Officers arrested Estrada at that address on July 7, 2014.

Detective Duran interviewed Estrada on the day of his arrest, after Estrada waived his *Miranda*[2] rights. Estrada told Duran he had used the nickname "Stalker." Duran asked if Estrada recognized one of the phone numbers from Clemons's incoming call log. Estrada identified the number as Alma Reyes's phone number. Reyes was present with Estrada when he was arrested.

Estrada presented an alibi defense through testimony from his former girlfriend/ mother of his son. She stated Estrada was sleeping in the room he rented in Highland Park around 6:30 a.m. on May 19, 2014 (the same time as the robbery), when she arrived to bring him food.

**Verdict and Sentencing**

Prior to reaching a verdict, the jury submitted a question to the trial court, stating, "'In the event that the jury reaches a verdict on one charge but cannot on another, what happens with the result of the case?"[3] The court responded, "Do your best to reach a verdict/decision on the charge and allegation. Do not be concerned with the procedure or what happens afterward." The jury also submitted a request for transcripts of Clemons's cross-examination and defense counsel's closing argument. The court provided a read-back of Clemons's cross-examination and informed the jury it would not hear a read-back of argument because that is not evidence.

The jury found Estrada guilty of second degree robbery and found true the enhancement allegation that Estrada personally used a handgun in the commission of the robbery (§ 12022.5, subd. (a)).

Estrada waived his right to jury trial on the prior prison term enhancement allegation set forth in the information, and the trial court found true that he had served a prior prison term within the meaning of section 667.5, subdivision (b). The trial court

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

[3] Because only one count, the robbery count, was tried to the jury, we presume the jury's reference to two counts in this question meant the robbery count and the firearm use enhancement allegation.

sentenced Estrada to eight years and eight months in prison: the midterm of three years for robbery (count 1), plus a consecutive four-year term for the firearm use enhancement and a consecutive one-year term for the prior prison term enhancement; and a consecutive term of eight months (one-third the midterm) for receiving stolen property (count 2) after the pretrial no contest plea. On count 3 for possession of methamphetamine, to which Estrada also pleaded no contest, the court imposed a one-year concurrent term.[4]

## DISCUSSION

### Admission of Mugshot Photograph

Over Estrada's Evidence Code section 352[5] objection, the trial court allowed the prosecution to introduce Estrada's "mugshot" or booking photograph for purposes of depicting Estrada's appearance at the time of his arrest. Apparently his hair was longer by the time of trial, a point he conceded in making his objection. Estrada argued the photograph was "very prejudicial" because (1) it was titled "mugshot," (2) he appeared to be "glowering and angry" in the photograph,[6] and (3) his overall appearance had not changed sufficiently by the time of trial to warrant the photo's introduction. The court overruled Estrada's objection (and later admitted the photograph into evidence), finding the evidence was more probative than prejudicial. During direct examination, Detective Duran described the photograph as a "booking photograph of Mr. Estrada" and testified the photograph accurately depicted Estrada's appearance on the date of his arrest in this

---

[4] The abstract of judgment does not reflect the sentence the trial court imposed on count 3. As set forth below in the disposition, we modify the judgment to correct that omission.

[5] Under Evidence Code section 352, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[6] We reviewed the mugshot photograph and observed nothing about Estrada's demeanor that would prejudice him in front of a jury. We find it unremarkable that he was not smiling and did not appear cheerful about his arrest in the photograph.

case. We review the trial court's admission of evidence for abuse of discretion. (*People v. Johnson* (2015) 61 Cal.4th 734, 767 ["The admission of photographs lies within the trial court's discretion and will not be disturbed absent an abuse of that discretion"].)

Estrada contends the trial court abused its discretion in admitting the mugshot photograph into evidence because (1) it revealed he had a prior criminal record, (2) it removed the question of identity from the jury, (3) it was not relevant to any material issue at trial, and (4) it was cumulative because Clemons, the victim, already had identified Estrada as the robber before the prosecution introduced the photograph. We reject each of these arguments.

The mugshot photograph did not disclose Estrada's prior criminal record to the jury. As the trial court explained in overruling Estrada's objection to this evidence, "This is the booking photo from this case. I mean, they [the jurors] know he was arrested. He is here in court. He was arrested and charged." (Compare *People v. Cook* (1967) 252 Cal.App.2d 25, 29 [error to admit mugshot taken seven years before trial, indicating the defendant had a prior criminal record].)[7] Estrada notes there are three different identification numbers on the photograph (an "FCN," a "CII," and an "OCA" number), but he does not explain how these numbers would have revealed his prior criminal record to the jury.

The fact the mugshot photograph identified Estrada by name does not mean it removed the question of Estrada's identity as the robber from the jury. The mugshot, coupled with Detective Duran's testimony, merely identified Estrada as the man arrested for the robbery of Clemons. It was for the jury to decide if Estrada, in fact, was the man who had committed the robbery.

The mugshot photograph was relevant to the material issue of identity. Clemons provided the police with copies of photographs she had obtained from Facebook,

_____

[7] We do not believe the use of the word "mugshot" on the photograph was unduly prejudicial to Estrada because the photograph relates to his arrest in this case and does not imply he has a prior criminal history.

depicting the man she claimed had robbed her. The purpose of the mugshot was to show the jurors Estrada's appearance at the time of his arrest so they could compare his appearance with that of the man in the Facebook photographs. Because Estrada's hair was longer at the time of trial, the mugshot presented a more accurate comparison. (See *People v. Peralez* (1971) 14 Cal.App.3d 368, 377 [police photograph of the defendant taken at the time of his arrest "was relevant to the identity of the [defendant] because of the change in his appearance between the time of booking and the time of trial"].)

Estrada asserts the mugshot photograph constituted cumulative evidence because the prosecution introduced the Facebook photographs and Clemons identified Estrada as the robber in court, before the prosecution introduced the mugshot. We disagree. The mugshot photograph was the only evidence depicting Estrada's appearance at the time of his arrest—less than two months after the crime—that the jury could compare to the Facebook photographs Clemons obtained the same day as the crime, and which she claimed depicted the robber. The trial occurred more than nine months after the crime, and Estrada's hair had grown longer.

The trial court acted within the bounds of its discretion in admitting into evidence the mugshot photograph. The probative value of the photograph—Estrada's appearance closer in time to the crime—was not "substantially outweighed by the probability that its admission [would] (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

Regardless of whether the trial court erred, we would not reverse Estrada's conviction because it is not reasonably probable the jury would have reached a result more favorable to him absent the mugshot photograph. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Carter* (2005) 36 Cal.4th 1114, 1170-1171 ["Under the *Watson* standard, the erroneous admission of a photograph warrants reversal of a conviction only if the appellate court concludes that it is reasonably probable the jury would have reached a different result had the photograph been excluded"].) Clemons unequivocally identified Estrada in court as the man who robbed her. Other substantial

7

evidence corroborated her identification (e.g., the fact a woman who was present with Estrada at the time of his arrest made multiple calls to Clemons's cell phone number after Clemons reported her cell phone stolen). We have no reason to believe the jury based its true finding on the firearm use enhancement on its response to the mugshot rather than Clemons's testimony regarding her observation of a gun, as Estrada suggests.

**Detective's Testimony Regarding Identification of Estrada as a Suspect**

When the prosecutor questioned Detective Duran about the steps he took to identify Estrada as a suspect after Clemons provided the Facebook photographs, Estrada declined to object to the line of questioning. Now, on appeal, he contends the trial court erred in admitting what he characterizes as Detective Duran's "identification testimony," arguing the testimony "was irrelevant, and unnecessarily duplicative of other identification testimony, [and] deprived Mr. Estrada of his constitutional right to be presumed innocent."

Detective Duran testified, in pertinent part: "The Facebook account that [Clemons] provided was under the name of Jose Rodriguez and a date of birth listed on the account was September 20 of 1985. [¶] I conducted a records check of that name with that date of birth and did not locate a match. [¶] So, then, I adjusted my search, removing the last name and used the name Jose with the same birthday and then obtained some photographs." Duran believed the man pictured in these photographs "was the same person depicted in the photographs provided by [Clemons]." Duran then "circulated a wanted persons flier with Mr. Estrada's photo and his last known address."[8] On July 7, 2014, officers arrested Estrada at that address. Duran identified Estrada in court as the person taken into custody on July 7, 2014. The prosecutor showed Duran the mugshot photograph and he described it "as a booking photograph of Mr. Estrada," accurately depicting his appearance on July 7, 2014, the date of his arrest.

---

[8] The prosecution did not introduce into evidence the photographs Detective Duran located during his "records check" or the "wanted persons flier."

Estrada forfeited this claim by failing to object below to the admission of this testimony. Under Evidence Code section 353, a ""defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable."" (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.) Estrada asserts his pretrial objection to the introduction of the mugshot photograph preserved this issue for appeal. We disagree. He is challenging testimony unrelated to the mugshot photograph—testimony about the steps Detective Duran took to identify Estrada as a suspect.

In a footnote, Estrada raises an ineffective assistance of counsel claim based on his trial attorney's failure to object to the admission of this testimony. "'To establish ineffective assistance of counsel, a [defendant] must demonstrate that (1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the [defendant] to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the [defendant]. [Citations.] "A reasonable probability is a probability sufficient to undermine confidence in the outcome.""" (*In re Jones* (1996) 13 Cal.4th 552, 561.) Estrada fails to provide any analysis supporting his ineffective assistance of counsel claim.

We agree with Estrada that testimony regarding the steps Detective Duran took to identify Estrada as a suspect is not relevant to any material issue in this case. But we need not decide whether Estrada's trial attorney rendered deficient representation in failing to object to this testimony because Estrada cannot demonstrate prejudice. It is not reasonably probable an objection would have resulted in a more favorable outcome. As discussed above, the strength of the evidence against Estrada belies any notion that Detective Duran's testimony about how he identified Estrada as a suspect determined the jury's verdict. Clemons identified Estrada as the man who robbed her, both before trial through the Facebook photographs and during trial through her in-court identification. A woman associated with Estrada attempted to contact him by dialing Clemons's cell phone number, corroborating Clemons's identification of Estrada as the man who stole her cell

9

phone. Clemons's testimony regarding her observation of a handgun in Estrada's waistband and his accompanying threats to shoot her support the jury's true finding on the firearm use enhancement.

**Impeachment of Clemons with Her Criminal Convictions**

Estrada contends the trial court erred in ruling he could impeach Clemons with only one of her prior convictions involving moral turpitude.

Before trial, the prosecution moved to exclude Clemons's convictions. At the hearing on the motion, the prosecutor informed the court Clemons had a 2001 felony conviction for burglary (§ 459) and a 2003 felony conviction for burglary and forgery (§ 470, subd. (d)),[9] both of which the court had dismissed in 2008 pursuant to section 1203.4 after fulfillment of the conditions of, or discharge from, probation. Estrada's counsel inquired if Clemons had any more recent "contacts" with law enforcement, and the prosecutor provided Clemons's rap sheet to the court.

Later in the day, the trial court informed the parties: "I haven't made up my mind exactly on the victim's record, but I am leaning toward allowing one of the prior convictions in, the most recent 459, just to call it a second degree burglary and just ask her that. [¶] And the reason for that is, even though I do believe it is remote, and I weighed it under [Evidence Code section] 352, she does have a lot of theft convictions and those theft convictions go back all the way to 2001 and there [are] several. And she also has some forgery, some fraud and, so, I don't think it is quite fair to give the jury the impression that she is completely without any prior moral turpitude type crimes." The court took the matter under submission, and ultimately ruled Estrada could impeach Clemons with the 2003 conviction, which the court and the parties agreed to refer to as a felony forgery conviction.

Estrada's counsel did not indicate she was dissatisfied with the trial court's ruling or state she wanted to use additional convictions or acts of moral turpitude to impeach

---

[9] Apparently there is only one 2003 conviction, although the parties refer to it as both a burglary and a forgery conviction.

10

Clemons. During cross-examination by Estrada's counsel, Clemons admitted the 2003 felony forgery conviction. The jury did not hear that the conviction was dismissed.

Estrada asserts, "Given the extensive record, the trial court abused its discretion in prohibiting Mr. Estrada from impeaching the state's primary witness except with a single forgery conviction." Estrada notes, in addition to the 2003 forgery conviction the trial court admitted, Clemons had the 2001 felony burglary conviction the prosecutor disclosed. Estrada also references the trial court's comments as it reviewed Clemons's rap sheet that she had a 2011 burglary contact (not conviction) and multiple theft convictions.

Although Estrada mentions this criminal history, he neglects to analyze the admissibility of any of these other convictions or acts of moral turpitude. For example, he fails to discuss the issue of remoteness with respect to the 2001 burglary conviction, an issue the trial court highlighted in making its ruling during this 2014 trial. (See *People v. Almarez* (1985) 168 Cal.App.3d 262, 268 [recognizing that the trial court, in the exercise of its discretion, "might have considered the 13-year-old forgery [conviction] too remote" to admit for impeachment purposes].) He fails to provide dates of the other theft convictions and whether they were misdemeanors or felonies, or provide details about the 2011 burglary contact. (See *People v. Doolin* (2009) 45 Cal.4th 390, 443 ["'[I]mpeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, [under Evidence Code section 352,] courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value'"].)

Given the vague record of Clemons's criminal history, Estrada's counsel's acquiescence in the trial court's ruling, and Estrada's failure to analyze the admissibility of any of the other convictions or acts of moral turpitude, Estrada has not demonstrated the trial court abused its discretion.

**Sufficiency of the Evidence Supporting the Firearm Use Enhancement**

Estrada contends there is insufficient evidence supporting the jury's true finding on the enhancement allegation that he personally used a handgun in the commission of the robbery.  (§ 12022.5, subd. (a).)[10]

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  The federal standard of review is to the same effect:  Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  [Citation.]  The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.  [Citation.]  . . .  ""'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]""" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

The jury's true finding on the allegation that Estrada personally used a handgun in the commission of the robbery is supported by sufficient evidence.  According to Clemons, Estrada threatened to "blast" her where she stood if she did not hand him her cell phone.  Immediately after making this statement, Estrada lifted his shirt, revealing what Clemons described as the black handle of a nine-millimeter handgun.  Clemons had observed nine-millimeter handguns prior to being the victim of this robbery.  After

_____

[10] Under section 12022.5, subdivision (a), "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

12

Estrada snatched the phone, he again threatened to "blast" Clemons, as he ordered her not to turn in his direction while he rode away. Clemons's observation of the item tucked into Estrada's waistband, which he revealed to her while threatening to "blast" her, constitutes substantial evidence that Estrada personally used a handgun in the commission of the robbery. (See *People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1437 ["when as here a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm within the meaning of section 12022.53, subdivision (b)"].)[11]

Estrada argues the jury struggled with Clemons's reliability, as evidenced by the request for a read-back of her cross-examination and the question indicating the jury might be having difficulty making a finding on the firearm use allegation. "The credibility of witnesses and the weight accorded the evidence are matters within the province of the trier of fact," not the appellate court. (*People v. Ramos* (2004) 121 Cal.App.4th 1194, 1207.) The jury found Estrada personally used a handgun in the commission of the robbery and substantial evidence supports the finding.

---

[11] Estrada challenges the sufficiency of the evidence establishing he had a gun in his waistband. To the extent there was sufficient evidence demonstrating the item in his waistband was a gun—and we have found the evidence sufficient—he does not challenge the sufficiency of the evidence demonstrating he "used" the gun within the meaning of section 12022.5, subdivision (a).

13

**DISPOSITION**

The judgment is modified to reflect the sentence the trial court imposed on count 3, possession of methamphetamine, a violation of Health and Safety Code section 11377, subdivision (a):  a one-year concurrent term.  In all other respects the judgment is affirmed.  The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


                                                              CHANEY, J.


WE CONCUR:



            ROTHSCHILD, P. J.



            JOHNSON, J.


14