Filed 8/14/25  P. v. Lewis CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B336966 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA083145) |
| v. | |
| DANTE XAVIER LEWIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Emily J. Cole, Judge.  Affirmed.

Christian E. Kernkamp, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Dante Xavier Lewis appeals from his conviction and sentence to six years in state prison for reckless driving causing specified injuries to another. (Veh. Code, §§ 23103, 23105.) Lewis contends the trial court prejudicially erred by admitting evidence of his prior felony convictions and an uncharged crime, refusing to instruct the jury on a necessity defense, instructing the jury on consciousness of guilt involving false statements and suppression of evidence, and refusing to strike his prior strike. Lewis also contends there was insufficient evidence to support his conviction. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

An amended information charged Lewis with reckless driving on a highway, which as described below, caused Bailey Sulek to lose consciousness and suffer brain injury, a concussion, bone fracture, and protracted loss or impairment of function of a bodily member or organ after Lewis's vehicle struck the truck Sulek was riding in as a passenger. (Veh. Code, §§ 23103, subd. (a), 23105.) The information further alleged Lewis inflicted great bodily injury on Sulek and suffered a prior strike. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, 12022.7, subd. (a).) The cause was tried to a jury.

A. *The People's Evidence*
1. *The Vehicle Collision*
On May 10, 2021, Adam Aceves was driving a pickup truck on Summerwind Drive. Sulek sat in the front passenger seat. As Aceves's truck passed through the intersection of Summerwind

and Rancho Vista Boulevard, witnesses testified that a second vehicle traveling on Rancho Vista Boulevard also entered the intersection. The second vehicle, driven by Lewis, passed through a red light, entered the intersection, and collided with Aceves's truck. Lewis's vehicle t-boned Aceves's truck, hitting the passenger side. Aceves's truck came to a rest on the curb. Lewis's vehicle stopped shortly after spinning and hitting a pole across the intersection. Aceves noticed Sulek appeared unconscious and exited the vehicle to assist Sulek. Upon exiting the vehicle, Aceves realized he was limping. The passenger side of Aceves's vehicle was crushed in, and firefighters had to remove Sulek from the vehicle.

After the incident, Aceves had some bruising and a sore shoulder. Sulek had a serious head injury, and she spent two weeks in the hospital and three weeks in a rehabilitation facility. Nearly three years after the incident, Sulek continued to experience pain. Sulek experiences migraines, body pain, short-term memory loss, has scars on her face and body, and nerve damage. The injuries Sulek suffered have affected her ability to walk, see, feel sensation on the right side of her body, and work.

2. *The Investigation*

Los Angeles County Deputy Sheriff Jesus Carbajal investigated the incident the day it happened. Deputy Carbajal took measurements, photographs, and statements at the scene from Aceves, Lewis, and his wife, Sandra Lewis.[1] Lewis

---

[1] For ease of reference and to avoid confusion, we refer to Lewis's wife as Sandra. We also refer to Lewis's girlfriend at the

3

volunteered for a breathalyzer, and after a DUI investigation, Deputy Carbajal concluded Lewis was not driving under the influence of alcohol or drugs.

Deputy Carbajal determined the speed limit on Summerwind Drive was 45 miles per hour and the speed limit on Rancho Vista Boulevard was 50 miles per hour. Further investigation by Los Angeles County Sheriff's Department Detective Elizabeth Sherman, the traffic investigator assigned to the case, concluded the accident resulted from "a high-speed impact" involving speeds of 50 to 60 miles per hour or higher.

B.    *Defense Evidence*

Lewis and Sandra testified that after picking up food and drinks, Lewis drove a passenger vehicle down Rancho Vista Boulevard with Sandra in the passenger seat. As they approached the intersection of Rancho Vista Boulevard and Summerwind Drive, Sandra reached for a drink in the backseat. Lewis explained he became distracted and looked away from the road when the lid popped off the drink and Sandra spilled the contents over herself, the center console, and on Lewis. Lewis and Sandra testified they did not tell Deputy Carbajal about the spilled drink at the time of the accident.

Lewis testified he did not see the traffic light, but when he looked back at the road, he saw the vehicle driving in front of him braking. Sandra confirmed Lewis's account of events and recalled seeing a yellow light before the accident. To avoid rear-

_____

time of trial, who happens to share the same last name, as Kimberly.

4

ending the braking vehicle, Lewis swerved to the empty left turn lane. Lewis explained he was a professional truck driver, who was trained not to brake hard to avoid "jackknif[ing]" the trailer. Lewis stated he reacted in line with his training. As a result, Lewis did not hit his brakes, traveled into the intersection without slowing, and collided with Aceves's truck.

## C.     *Verdict and Sentence*

The jury convicted Lewis of one count of reckless driving with specified injuries. (Veh. Code, §§ 23103, subd. (a), 23105.) Lewis then admitted a prior strike conviction of criminal threats in 2006. The trial court sentenced Lewis to six years in state prison, comprised of the upper term of three years, doubled for the prior strike pursuant to the Three Strikes law. (Veh. Code, § 23015; Pen. Code, § 12022.7, subd. (a).)

Lewis timely appealed.

## DISCUSSION

## A.     *The Trial Court Did Not Abuse Its Discretion by Admitting Evidence of Lewis's Criminal History*

Lewis argues the trial court prejudicially erred by admitting evidence of his prior felony convictions and an uncharged vandalism incident between him and Sandra in the courthouse parking lot. Lewis contends the prejudice evinced by the evidence substantially outweighed its probative value and the trial court should have excluded it pursuant to Evidence Code section 352.

5

1.  *Governing Law and Standard of Review*

The California Constitution and Evidence Code section 788 authorize the use of certain prior convictions for impeachment. (See Cal. Const., art. I, § 28, subd. (f)(4) ["Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding."]; Evid. Code, § 788 ["For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony," except in circumstances not relevant here.].)  Prior felony convictions admissible under article I, section 28, subdivision (f) of the California Constitution and Evidence Code section 788 must be crimes of moral turpitude, "'even if the immoral trait is one other than dishonesty.'" (*People v. Hinton* (2006) 37 Cal.4th 839, 888; see *People v. Clair* (1992) 2 Cal.4th 629, 654.)

"Because evidence of other crimes may be highly inflammatory, the admission of such evidence ""must not contravene other policies limiting admission, such as those contained in Evidence Code section 352."""" (*People v. Davis* (2009) 46 Cal.4th 539, 602; see *People v. Anderson* (2018) 5 Cal.5th 372, 407 ["a witness may be impeached with any prior felony conviction involving moral turpitude, subject to the trial court's discretion under Evidence Code section 352"].)

Evidence Code section 352 gives the trial court "discretion [to] exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or

of misleading the jury."  "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify."  (*People v. Clark* (2011) 52 Cal.4th 856, 931.)

"""The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.  In applying section 352, 'prejudicial' is not synonymous with 'damaging.'"""  (*People v. Williams* (2013) 58 Cal.4th 197, 270; accord, *People v. Bolin* (1998) 18 Cal.4th 297, 320.)  "'Evidence is substantially more prejudicial than probative . . . if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome."'"  (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.)  Because evidence of uncharged crimes "may be viewed as 'inherently prejudicial' [citation], "'uncharged offenses are admissible only if they have *substantial* probative value."'"  (*People v. Rogers* (2013) 57 Cal.4th 296, 331 (*Rogers*); accord, *People v. Foster* (2010) 50 Cal.4th 1301, 1331; see *People v. Williams, supra*, 58 Cal.4th at p. 271 [evidence was "probative in that it would allow the jury to accurately assess the credibility of the prosecution's central witness"].)

We review for an abuse of discretion a trial court's decision to admit prior convictions or uncharged crimes under Evidence Code section 352.  (See *People v. Edwards* (2013) 57 Cal.4th 658, 722; *People v. Carkhum-Murphy* (2019) 41 Cal.App.5th 289, 295.)

### 2. *Proceedings Below*

At the beginning of trial, the court considered the parties' evidentiary motions, including whether evidence of Lewis's criminal record should be excluded. The prosecutor urged the trial court to admit four felony convictions and two misdemeanor convictions for impeachment purposes: grand theft in 2004 in violation of Penal Code section 487, subdivision (a); criminal threats in 2006 in violation of Penal Code section 422; resisting arrest in 2009 and 2013 in violation of Penal Code section 69; and misdemeanor convictions for petty theft in 2006 and domestic violence against Sandra in 2013. Defense counsel argued the convictions were "significantly old" with the most recent ones occurring a decade ago in 2013. Defense counsel also asserted the convictions were not for motor-vehicle-related offenses and would confuse the issues.

The court indicated it was concerned with the age of the offenses but stated the prior convictions were less prejudicial because they were not motor-vehicle related. The prosecutor argued that, aside from the criminal convictions, there were a number of incidents that "close that gap" between 2013 and 2023, including incidents of domestic violence against Sandra in 2013, 2014, and 2017. The prosecutor explained these cases were "either declined to be filed due to lack of sufficient proof or uncooperative witnesses, and one case was actually filed and Ms. [Sandra] Lewis became uncooperative and so it had to be dismissed." The prosecutor also stated Lewis could have a pending misdemeanor case of vandalism that occurred during trial. Defense counsel argued the domestic violence incidents were not related to Lewis's prior convictions and were not admissible under Evidence Code section 1101 as prior bad acts.

8

The court stated it would allow the admission of the four felony convictions as crimes of moral turpitude if Lewis chose to testify. The court explained it had reached this conclusion by conducting an Evidence Code section 352 analysis.

Later that day, the prosecutor expanded on her request to admit evidence of the potential vandalism case against Lewis and other prior incidents of domestic violence. The prosecutor indicated the vandalism incident occurred during trial in the court parking lot and involved Lewis jumping on Sandra's car and breaking the windshield. The prosecutor explained Sandra was a percipient witness to the accident and "the jury cannot assess her credibility accurately without this history." Defense counsel argued that allowing such evidence would result in a mini-trial, confuse the jurors, and result in severe prejudice.

The trial court determined the prior domestic violence incidents were more prejudicial than probative and excluded them. The trial court, however, ruled that it would allow evidence of the uncharged vandalism offense. The court explained the incident was "so highly probative that . . . it completely outweighs the prejudicial nature" because Sandra was a witness and it bore on her credibility. The court stated it viewed the incident "almost as an incident of witness tampering."

At trial, Lewis testified and admitted to the four prior felony convictions the court ruled were admissible on direct examination. Sandra testified regarding the vandalism incident in the court parking lot. She explained she had been separated from Lewis since 2014. On October 30, 2023, during Lewis's trial for the present charge, Sandra received a phone call from Lewis's then-girlfriend, Kimberly, who stated she had just engaged in an altercation with Lewis in the court parking lot and wanted to get

a restraining order against him. Sandra went to the courthouse and retrieved paperwork for a restraining order from the clerk's office for Kimberly. When she exited the courthouse, she observed Kimberly attempting to drive Sandra's car out of the parking lot with Lewis jumping on the hood and screaming at Kimberly. Kimberly drove Sandra's car around the parking lot and onto a street with Lewis still on top.

Sandra located Kimberly's unlocked car, found the keys in it, and drove after her. Sandra managed to switch cars with Kimberly. Lewis, who was no longer on the car, asked Sandra to drive him back to the courthouse. When Sandra refused, Lewis got on top of her car again and kicked in her windshield. Lewis fell off the car, hit his head, and lost consciousness after Sandra drove off. Sandra drove back to the court because she felt it was a safe place for her. She told the deputies who arrived on the scene that she would not testify on Lewis's behalf at trial, but later changed her mind.

3.    *Prior Felony Convictions*

We conclude the trial court did not abuse its discretion when it admitted evidence of Lewis's prior felony convictions. There is no question the evidence was admissible under article I, section 28, subdivision (f) of the California Constitution and Evidence Code section 788 for impeachment purposes. The prior felony convictions for theft, resisting arrest and criminal threats were crimes of moral turpitude. (See *People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 (*Mendoza*) ["burglary, robbery, and other various theft-related crimes are probative on the issue of the defendant's credibility"]; *People v. Williams* (1999) 72 Cal.App.4th 1460, 1465 [resisting arrest under Pen. Code, § 69

10

is a crime of moral turpitude]; *People v. Lepolo* (1997) 55 Cal.App.4th 85, 90 ["conduct involving violence, menace or threats" "evinces moral turpitude"].)  Here, Lewis's credibility was a central issue at trial because his defense rested on his testimony that he did not act recklessly given his training and the circumstances of the accident.  Lewis does not address the admissibility of his prior convictions under article I, section 28, subdivision (f) of the California Constitution or Evidence Code section 788.

Lewis instead argues the trial court abused its discretion by admitting the prior convictions under Evidence Code section 352 because they were "old and unrelated" to the charged offense and framed Lewis as "a career felon and unhinged abuser of women."  Lewis does not demonstrate the trial court abused its discretion.

Although the prior convictions were remote in time, that does not render them "automatically inadmissible for impeachment purposes." (*Mendoza, supra,* 78 Cal.App.4th at p. 925 [11- and 21-year-old convictions were not too remote in time under Evid. Code, §§ 352 and 788 to be admissible where the defendant suffered multiple convictions and served several prison terms between offenses]; see *People v. Campbell* (1994) 23 Cal.App.4th 1488, 1497, fn. 14 ["a 10-year-old conviction is not too remote in time to be admissible under [Evidence Code] section 352"]; see also *People v. Davis* (2009) 46 Cal.4th 539, 602 [17-year-old crimes were admissible under Evid. Code, § 1101].) Remoteness of a prior conviction tends to favor exclusion only "'if it occurred long before and has been followed by a legally blameless life.'" (*People v. Beagle* (1972) 6 Cal.3d 441, 453, noting abrogation by statute on a different ground by *People v. Diaz*

11

(2015) 60 Cal.4th 1176, 1190.) Thus, "[d]espite its age" a conviction may nonetheless be admitted when the defendant "did not subsequently lead a blameless life." (*People v. Green* (1995) 34 Cal.App.4th 165, 183.) "[T]he systematic occurrence of defendant's priors over a [long] period creates a pattern that is relevant to defendant's credibility." (*People v. Muldrow* (1988) 202 Cal.App.3d 636, 648.)

Here, Lewis suffered felony convictions over a period of nine years, from 2004 to 2013. Although he was not convicted of any crimes after 2013, the record shows he did not then lead a "legally blameless" life; he engaged in domestic violence incidents that did not result in charges primarily due to uncooperative victims. The record shows he acted violently towards Sandra during the trial by jumping on her car and kicking in her windshield (which we examine below). Sandra told the authorities she did not want to press charges. At the time of Sandra's testimony, the People had not charged Lewis with any crime for this incident.

The fact that the prior convictions did not involve motor-vehicle-related crimes does not mean they should not have been admitted. Indeed, the nature of the prior convictions for theft, resisting arrest, or criminal threats was sufficiently different from the present offense that it was not likely the jury would convict Lewis because it believed he had a propensity to drive recklessly. (See *People v. Rist* (1976) 16 Cal.3d 211, 219 ["A jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged. . . . [If] the dissimilar prior crimes are available as grounds of impeachment [ ] exclusion of the similar one is the wiser path."].)

12

Nor did the prior convictions tend to evoke an irrational emotional response against Lewis.  (See *People v. Scully* (2021) 11 Cal.5th 542, 587 [trial court acted within its discretion under Evid. Code, § 352 because "[n]one of the prior crime evidence was particularly inflammatory or likely to invoke an emotional bias against defendant"].)  Neither defense counsel nor the prosecutor elicited any details about the convictions such that Lewis was portrayed as "a career felon and unhinged abuser of women."  Aside from the uncharged vandalism incident, the trial court disallowed the admission of the domestic violence arrests and incidents.  On their face, the four brief questions asked by defense counsel about Lewis's convictions for theft, resisting arrest, and criminal threats did not pose a risk of undue prejudice.  Under these circumstances, the trial court did not abuse its discretion when it allowed evidence of Lewis's prior felony convictions.

4.    *Uncharged Vandalism Offense*

Nor are we persuaded the trial court abused its discretion when it allowed evidence of the uncharged vandalism offense that occurred during trial.  "'Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion "must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."'"  (*People v. Williams, supra,* 58 Cal.4th at pp. 270-271.)  The uncharged vandalism evidence was damaging and prejudicial, but the question before us is whether the trial court abused its discretion in deciding the evidence had substantial

13

probative value that outweighs the prejudice.  (See *Rogers*, *supra*, 57 Cal.4th at p. 331.)

Here, the uncharged vandalism evidence was highly probative because Sandra was a crucial witness for the defense. Evidence showing that Sandra may have feared Lewis's violent temper could explain why she initially failed to tell officers at the scene of the accident about the spilled drink but later testified to it at length at trial.  Sandra also told responding officers at the courthouse parking lot that she would not testify in this case, yet she changed her mind and testified.  The evidence of the uncharged vandalism allowed the jury to accurately assess Sandra's credibility and the inconsistencies in her testimony and statements to police.  (See *People v. Lopez* (2018) 5 Cal.5th 339, 360 [evidence that defendant broke witness's leg was "probative in that it would explain to the jury why [witness] was afraid to testify against [defendant], allowing the jury to accurately assess [her] credibility and the inconsistencies in her testimony"].)  The court did not abuse its discretion by concluding this evidence was more probative than prejudicial under Evidence Code section 352.

B.      *The Trial Court Did Not Err in Instructing the Jury*

Lewis argues the trial court made several errors in instructing the jury.  We conclude the arguments lack merit.

1.      *The Trial Court Did Not Err When It Declined to Give a Necessity Instruction*

At trial, Lewis requested the court to instruct the jury on the affirmative defense of necessity under CALCRIM No. 3403 because "a reasonable person . . . would believe that veering into that left-hand lane was necessary under those circumstances."

14

The court declined to do so, citing the lack of evidence supporting that instruction. Lewis challenges this determination on appeal and contends it was prejudicial error.

### a. *Governing law and standard of review*

We review de novo the trial court's decision not to instruct on a defense on the basis that substantial evidence did not support the instruction. (See *People v. Cole* (2004) 33 Cal.4th 1158, 1218; *People v. Manriquez* (2005) 37 Cal.4th 547, 581, 584; *People v. Posey* (2004) 32 Cal.4th 193, 218.)

"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'" (*People v. Najera* (2008) 43 Cal.4th 1132, 1136.)

A trial court is required to give a requested instruction concerning a theory of defense "'only if there is substantial evidence to support the defense.'"[2] (*In re Christian S.* (1994)

---

[2] Lewis argues, "The court must give any correct instructions on defendant's theory of the case which the evidence justifies, no matter how weak or unconvincing that evidence may be," citing *People v. Bynum* (1971) 4 Cal.3d 589, 604, overruled on another ground by *People v. Williams* (1976) 16 Cal.3d 663, 669. *Bynum* is inapt because it addressed a court's duty to instruct sua sponte on the lesser included offense of second degree murder, not on its duty to instruct on a theory of defense. (See *People v. Barton* (1995) 12 Cal.4th 186, 199 [discussing difference between "the trial court's broad duty to instruct on lesser included offenses and its narrower obligation to instruct on particular defenses"].)

7 Cal.4th 768, 783 (italics omitted); accord, *People v. Stitely* (2005) 35 Cal.4th 514, 551; *People v. Roldan* (2005) 35 Cal.4th 646, 715 [trial court has the authority to refuse requested instructions on a defense theory for which "only minimal and insubstantial evidence" has been presented], disapproved on a different ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  "In determining whether the evidence is sufficient to warrant a jury instruction," the courts do not "determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt.'" (*People v. Salas* (2006) 37 Cal.4th 967, 982.)

"To justify an instruction on the defense of necessity, a defendant must present evidence sufficient to establish that [he] violated the law (1) to prevent a significant and imminent evil, (2) with no reasonable legal alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief that the criminal act was necessary to prevent the greater harm, (5) with such belief being objectively reasonable, and (6) under circumstances in which [he] did not substantially contribute to the emergency." (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1135-1136; see CALCRIM No. 3403.)

### b. *Analysis*

Lewis contends the necessity instruction was supported by evidence that Sandra spilled her drink, thus distracting Lewis, who swerved to avoid hitting the vehicle stopped at the light.  In short, Lewis contends it was necessary for him to drive recklessly to avoid hitting the vehicle in front of him (i.e., the "significant and imminent evil").  Even if we were to accept this argument, Lewis fails to cite any substantial evidence that he lacked a

16

reasonable legal alternative to reckless driving. A reasonable legal alternative to swerving and entering an intersection at a high speed was to brake. (See, e.g., *People v. Coulthard* (2023) 90 Cal.App.5th 743, 768 ["'The necessity defense is very limited and depends on the lack of a legal alternative to committing the crime.'"].) Lewis testified he "never hit [his] brakes" because he was trained to prevent a semi-truck from jackknifing. But Lewis was not driving a semi-truck during the incident and was instead driving a passenger car. Even if Lewis had a good faith belief that swerving without braking was necessary to prevent the purported greater harm of rear-ending a stopped vehicle, there was no evidence this belief was objectively reasonable.

Lewis also fails to cite any evidence that he did not substantially contribute to the emergency. Lewis suggests the "emergency" was created by Sandra spilling a drink and distracting him. Yet, the evidence at trial was that Lewis was speeding and failed to brake before entering the intersection and hitting Aceves's truck. Under these circumstances, Lewis's own actions substantially contributed to the emergency. There was insufficient evidence to warrant instructing the jury on the defense of necessity.

2. *The Trial Court Properly Instructed the Jury with CALCRIM No. 362*

Lewis next contends there was insufficient evidence to warrant instructing the jury with CALCRIM No. 362, which addresses a defendant's consciousness of guilt by making false statements. CALCRIM No. 362 provides: "If the defendant made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to

17

mislead, that conduct may show he was aware of his guilt.  [¶]  If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance.  However, the evidence that the defendant made such a statement cannot prove guilt by itself."

The instruction is proper where the evidence indicates that the defendant invented a story to explain his or her conduct.  (See *People v. Williams* (1995) 33 Cal.App.4th 467, 478-479 [discussing CALJIC No. 2.03, predecessor to CALCRIM No. 362].)  "Deliberately false statements to the police about matters that are within an arrestee's knowledge and materially relate to his or her guilt or innocence have long been considered cogent evidence of a consciousness of guilt, for they suggest there is no honest explanation for incriminating circumstances."  (*People v. Williams* (2000) 79 Cal.App.4th 1157, 1167-1168.)  The false nature of the defendant's statement may be shown by inconsistencies in the defendant's own testimony, his or her pretrial statements, or by any other prosecution evidence.  (See *People v. Kimble* (1988) 44 Cal.3d 480, 498.)

The record reveals Lewis did not disclose to the responding officer that Sandra spilled a drink in the car and caused him to be distracted at the time of the accident.  Yet, his defense at trial rested on his and Sandra's testimony that he became distracted by the spilled drink.  This discrepancy is sufficient evidence to justify the court's instruction on CALCRIM No. 362.  (See *People v. Barnwell* (2007) 41 Cal.4th 1038, 1057 [consciousness of guilt instruction proper in light of discrepancies between defendant's statement to the police and his trial testimony].)

18

Lewis argues the instruction was improper because his statement about the spilled drink was not made for self-protection, citing *People v. Rankin* (1992) 9 Cal.App.4th 430, 436. According to Lewis, he was unaware at the time of the accident that any serious injuries resulted from the crash or that he would be charged with a crime. Thus, he could not have made that statement to protect himself from criminal charges he did not know would arise one year after the accident. Lewis presents no authority for the argument that the instruction requires a defendant to know at the time he made the false statement that he would be charged with a crime. *Rankin*, on which Lewis relies, states only that CALJIC No. 2.03 (predecessor to CALCRIM No. 362) "should never be given unless it can be inferred that the defendant made the false statement for the purpose of deflecting suspicion from himself, as opposed to protecting someone else. [Citation.] Only under such circumstances does a false statement indicate a consciousness of the defendant's *own* guilt, thus becoming admissible against *him*." (*Rankin*, at p. 436, fn. omitted.) Here, the statement regarding the spilled drink was not intended to protect Sandra or anyone other than Lewis from liability for the accident. *Rankin* does not apply to these facts.

3. *The Trial Court Properly Instructed the Jury with CALCRIM No. 371*

Lewis also contends the trial court erred when it instructed the jury with CALCRIM No. 371 without substantial evidence to support it. CALCRIM No. 371 states: "If the defendant tried to hide evidence or discourage someone from testifying against him, that conduct may show that he was aware of his guilt. If you

19

conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself."

"[I]n order for a jury to be instructed that it can infer a consciousness of guilt from suppression of adverse evidence by a defendant, there must be some evidence in the record which, if believed by the jury, will sufficiently support the suggested inference." (*People v. Hart* (1999) 20 Cal.4th 546, 620.) An appellate court determines whether there was substantial evidence in the record to support giving an instruction on suppression or fabrication of evidence. (See *ibid*.) There need only be some evidence, not conclusive evidence, of the facts giving rise to the inference. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 102.)

There is sufficient evidence in the record here which, if believed by the jury, would support an inference of Lewis's consciousness of guilt from his conduct involving Sandra. In particular, Sandra initially told responding officers she was unwilling to testify for Lewis after his violent conduct against her in the court parking lot. Yet, she later changed her mind and her testimony corroborated his version of events. The trial court correctly viewed the incident "almost as an incident of witness tampering."

Lewis argues CALCRIM No. 371 is warranted only when the conduct prevents a witness from testifying. In Lewis's view, CALCRIM No. 371 does not apply because he wanted Sandra to testify. The law does not support the contention. Consciousness of guilt may be inferred from conduct that convinces a witness to testify in favor of the defendant. (See, e.g., *People v. Hunt* (1982) 133 Cal.App.3d 543, 560 [consciousness of guilt may be inferred

20

when defendant urges his fiancée to give false testimony].) The trial court did not err by instructing the jury with CALCRIM No. 371.

C.     *The Trial Court Did Not Abuse Its Discretion When It Declined To Strike Lewis's Prior Strike Offense*

Lewis next argues the trial court erred when it denied his request to strike his 18-year-old prior strike offense of criminal threats (Pen. Code, § 422) under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) and Penal Code section 1385. At the sentencing hearing, the trial court reasoned, "In a vacuum it would appear that the 2006 strike would be remote and would be worthy of striking. However, the court does not find that the strike prior is remote based on subsequent conduct after the strike." The court then indicated it incorporated the People's argument into its reasoning.[3]

The purpose of the three strikes law is "to provide greater punishment for recidivists." (*People v. Davis* (1997) 15 Cal.4th 1096, 1099.) Where a defendant does not fall within the spirit of the three strikes law, however, a trial court may strike or dismiss a prior conviction in the furtherance of justice. (See Pen. Code, § 1385, subd. (a); see also *Romero, supra*, 13 Cal.4th at p. 504.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three

---

[3]     The People argued that although Lewis alleged he had not been in prison in over 10 years, his criminal history was extensive and included multiple domestic violence incidents from 2012 to 2023 involving Sandra and Kimberly that did not result in charges only due to their unwillingness to cooperate in the prosecution.

21

Strikes law . . . or in reviewing such a ruling, the court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"'The striking of a prior serious felony conviction is not a routine matter.  It is an extraordinary exercise of discretion, and is very much like setting aside a judgment of conviction after trial.'" (*People v. McGlothin* (1998) 67 Cal.App.4th 468, 474.)  It is a conclusion "that an exception to the [sentencing] scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." (*Id.* at p. 474.)

"[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so.  In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.  [¶]  In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*); see *People v. Lua* (2017) 10 Cal.App.5th 1004, 1020.) An abuse of discretion occurs, for example, where the trial court was not aware of its discretion to strike a prior conviction, where

22

the court considered impermissible factors in declining to strike a prior conviction, or where imposing the three strikes law produces an arbitrary, capricious or patently absurd result under the facts of a particular case. (See *Carmony*, at p. 378; *Lua*, at p. 1020.)

"'[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation] or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*Carmony, supra*, 33 Cal.4th at p. 378.) Only extraordinary circumstances where the relevant factors manifestly support the striking of a prior conviction will support a finding that a defendant falls outside the spirit of the three strikes law. (See *ibid*.) The burden is on the party challenging the sentence to clearly show the sentence was irrational or arbitrary. (See *id*. at p. 376.)

With this guidance in mind, we conclude the trial court did not abuse its discretion in denying Lewis's request to dismiss his prior strike conviction. The trial court expressly considered Lewis's involvement in domestic violence incidents as part of its decision. The court thus properly considered Lewis's background, character, and prospects in denying his *Romero* motion.

Lewis contends the remoteness of the prior conviction coupled with his current gainful employment and support of his daughter are reasons to strike the prior strike. These arguments are unavailing under the circumstances presented.

The "remoteness of a prior conviction, 'by itself, cannot be the basis for dismissing a prior strike conviction.'" (*People v. Dowdy* (2024) 107 Cal.App.5th 1, 12; see Pen. Code, § 667, subd. (c)(3) ["[t]he length of time between the prior serious or violent felony conviction and the current felony conviction shall not affect the imposition of sentence"]; *People v. Strong* (2001) 87 Cal.App.4th 328, 342 [§ 667, subd. (c)(3), "suggests, at a minimum, that remoteness alone cannot take a defendant outside the spirit of the very law that expressly rejects remoteness as a basis for avoiding the law"], disapproved on another ground by *People v. Dain* (Aug. 4, 2025, No. S283924) ___Cal.5th___ [2025 Cal. LEXIS 4911] (*Dain*).) "[O]lder strike convictions do not deserve judicial forgiveness unless the defendant has used them as a pivot point for reforming his ways." (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1107.)

The record here shows Lewis did not use the 2006 strike conviction as a pivot point for reforming his ways. Lewis continued to commit crimes after 2006; he suffered felony convictions until 2013. Although he was not convicted of any crimes after 2013, the record shows the trial court found Lewis could not be deemed outside the spirit of the three strikes law due to his subsequent conduct. He engaged in acts of domestic violence even during the time of trial. The record shows he acted violently towards Sandra during the trial by jumping on her car and kicking in her windshield. This incident did not result in charges against Lewis because Sandra told the authorities she did not want to press charges.

Lewis argues the trial court could not base its *Romero* ruling on incidents that did not result in convictions, citing a number of cases where courts declined to strike prior convictions due to the defendants' subsequent convictions for serious and violent felonies. (See, e.g., *People v. Williams, supra,* 17 Cal.4th at p. 152; *People v. Pearson* (2008) 165 Cal.App.4th 740; *People v. Gaston* (1999) 74 Cal.App.4th 310, disapproved on another ground by *Dain, supra,* (Aug. 4, 2025, No. S283924) ___Cal.5th___ [2025 Cal. LEXIS 4911].) None of these cases stands for the proposition that a trial court may consider only subsequent convictions in its decision. Instead, the California Supreme Court has directed courts to consider, in addition to any felony convictions, "the particulars of [a defendant's] background, character, and prospects" to determine whether he may be deemed outside the spirit of the three strikes law. (*People v. Williams,* at p. 161.) As stated, the trial court properly considered the domestic violence incidents in denying his *Romero* motion even if they did not amount to felony convictions.

Lewis further contends the court failed to consider that he is gainfully employed and supporting his young daughter.[4] In Lewis's *Romero* motion, Lewis only asserted he drove "thousands of miles" during the pandemic to deliver refrigerated goods and medical supplies to various states, without reference to his daughter. The court expressly noted it considered Lewis's motion as well as counsel's arguments in making its decision. From these facts, we may infer the court knew about and did consider his current circumstances in its ruling. In all events, a court "is

---

[4] Sandra testified at trial that she had "full, sole custody" and that Lewis did not provide any financial support for their child.

presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310; accord, *People v. Galvez* (2011) 195 Cal.App.4th 1253, 1264 ["'[A]bsent a showing to the contrary, the trial court is presumed to have known and followed the applicable law and to have properly exercised its discretion.'"].)

D.    *Substantial Evidence Supports the Conviction for Reckless Driving*

Lewis argues that in light of all the evidence in the record, a rational trier of fact could not have found him guilty beyond a reasonable doubt. According to Lewis, his actions could at most be considered negligent, but did not "rise to the level of wanton disregard for the safety of others."

1.    *Governing Law and Standard of Review*

To assess a sufficiency of the evidence challenge, we "review the whole record to determine whether *any* rational trier of fact" could have found the defendant guilty of the offense. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; see *People v. Maury* (2003) 30 Cal.4th 342, 403.) "In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Zamudio,* at p. 357; see *People v. Johnson* (1980) 26 Cal.3d 557, 576.)

Vehicle Code section 23103 provides, "[a] person who drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." (Veh.

Code, § 23103, subd. (a).) "'As the reckless driving statute has never defined driving with "willful or wanton disregard for the safety of persons or property," courts have determined that it targets driving manifesting a particular state of mind [citation], namely, "consciousness of the results with intent to omit or do an act, realizing the probable injury to another; or acting in reckless disregard of the consequences; or conduct exhibiting reckless indifference as to the probable consequences with knowledge of likely resulting injury."'" (*People v. Walker* (2021) 64 Cal.App.5th 27, 32; accord, *People v. Young* (1942) 20 Cal.2d 832, 837.)

2.      *Substantial Evidence Supports a Finding Lewis Acted with Wanton Disregard of Others' Safety*

Lewis testified at trial he became distracted by the spilled drink, swerved into a left turn lane to avoid rear-ending the stopped vehicle in front of him, and without braking or knowing what color the stoplight was, continued into the intersection. Lewis agreed that it would be "very risky to the safety of other people to enter that intersection against a red light." Additionally, the traffic investigator testified the incident involved "a high-speed impact" caused by Lewis's vehicle. Rather than braking as he approached the intersection, eyewitnesses testified that Lewis "rev[ved]" his engine as he passed their stopped vehicles and collided with Aceves's truck. Eyewitnesses also testified that Lewis's traffic light was red at the time he entered the intersection. This constitutes substantial evidence of a "wanton disregard for the safety of persons or property" pursuant to Vehicle Code section 23103. (See *People v. Barber* (2020) 55 Cal.App.5th 787, 808 [substantial evidence supported defendant's conviction for reckless driving where he drove in an

27

area where pedestrians and bicycles were known to occupy and where a reasonable person would know was likely to cause serious injury]; *People v. Escarcega* (2019) 32 Cal.App.5th 362, 366-367 [reckless driving conviction affirmed where defendant had been speeding and intentionally crossed into oncoming traffic, despite not being able to see the oncoming traffic].)

Lewis argues there is no evidence that he was speeding or driving under the influence of alcohol or drugs. Lewis explains he only entered the intersection to avoid rear-ending another vehicle, and he failed to brake due to his training as a commercial truck driver. According to Lewis, these facts support a finding he was not driving recklessly.

Lewis presented his alternate explanation of how the accident occurred to the jury, which rejected it, and on appeal his explanation does not override the substantial evidence supporting his conviction outlined above. As the reviewing court, we review the evidence in the light most favorable to the trial court to determine whether a reasonable trier of fact can interpret the record to support the judgment. (See *People v. Jones* (1962) 211 Cal.App.2d 63, 71-72.) Since there is substantial evidence supporting the jury's finding that Lewis was driving recklessly, Lewis's sufficiency of the evidence challenge does not carry the day. "''[O]ur opinion that the circumstances also might reasonably be reconciled with a contrary finding" does not render the evidence insubstantial.'" (*People v. Tafoya* (2007) 42 Cal.4th 147, 170.)

## DISPOSITION

The judgment is affirmed.


                                        MARTINEZ, P. J.

We concur:



    SEGAL, J.                    STONE, J.